IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| Dustin Dyer<br>*Plaintiff*<br><br>v.<br><br>Shirrellia Smith<br>*- and -*<br>Unknown Transportation Security Officer<br>*Defendants* | Case No. 3:19cv921<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

1) In June 2019, Plaintiff Dustin Dyer ("Dyer") was a ticketed passenger traveling with his husband and children through Richmond International Airport ("RIC"), all of whom entered a checkpoint operated by the U.S. Transportation Security Administration ("TSA") as required to board their flight.

2) Dyer's husband was informed that he would need to submit to a pat-down search, during which Dyer attempted to exercise his First Amendment right to record the search of his husband using his cell phone camera.

3) A TSA screener, Defendant Unknown Transportation Security Officer ("TSO") falsely asserted that Dyer was prohibited from video recording, after which Defendant Shirrellia Smith ("Smith"), a Supervisory Transportation Security Officer not only re-iterated TSO's false assertion, but also ordered Dyer to delete the video Dyer had taken so far.

4) In doing so, Defendants TSO and Smith violated Dyer's First and Fourth Amendment rights.

## JURY TRIAL

5) Dyer demands a trial by jury on all issues so triable.

## PARTIES

6) Plaintiff Dyer is a natural person living in Henrico, VA.

7) Defendant TSO is the employee of the U.S. Transportation Security Administration who first ordered Plaintiff to cease recording, and is a natural person, upon belief, residing in or around Richmond, VA. TSO is sued in her individual capacity.

8) Defendant Smith is a supervisory employee of the U.S. Transportation Security Administration who reiterated TSO's order and further ordered Dyer to delete any video already recorded, and is a natural person, upon belief, residing in or around Richmond, VA. Smith is sued in her individual capacity.

9) Plaintiff will use discovery to identify the true name of Defendant TSO and will move the Court for leave to amend this Complaint with the same.

## JURISDICTION & VENUE

10) Personal jurisdiction is proper because all defendants work and, upon belief, reside, within the Commonwealth of Virginia.

11) Subject matter jurisdiction is proper because Plaintiff asserts claims under the United States Constitution.

12) Venue is proper because the incident that gave rise to the complaint occurred within the Eastern District of Virginia.

## ALLEGATIONS OF FACT

13) On June 8th, 2019, at or around 3:00 PM, Dyer arrived at RIC.

14) Accompanying Dyer at that time were his husband and children.

15) Dyer, his husband, and their children all possessed valid boarding passes for a flight departing that day from RIC.

16) All passengers at RIC are required to pass through a security checkpoint operated by the U.S. Transportation Security Administration in order to board their flight.

17) Dyer, his husband, and their children approached the security checkpoint and presented themselves for screening.

18) Dyer and the children were cleared by TSA screeners without delay.

19) Dyer's husband was informed that he would have to submit to a pat-down search because he was in possession of infant formula that could not be opened for testing[1].

20) Dyer's husband submitted to the pat-down search without objection.

21) As the pat-down search began, Dyer turned on the camera of his cell phone and began recording the search.

22) Approximately one minute after the recording began, TSO noticed that Dyer was recording.

23) TSO approached Dyer and said, "For the purposes of this, this is sensitive when we're doing pat-downs of the person's body, alright, and you're impeding his ability to do his job."

24) Interference of the screening duties of a TSA screener is prohibited by federal law and can subject any person doing so to a fine in excess of US$13,000.

---

[1] TSA policy generally prohibits liquids in containers over 3.4 ounces; however, infant formula, breastmilk, and the like may be transported if they can be tested for explosive trace. In the event that a container with such liquids cannot be opened (*e.g.*, due to concerns of contamination or spoliation), TSA policy is to allow the liquid but "pat down" the person transporting the liquid.

25) The clear implication of TSO's words were that Dyer must cease recording of the pat-down search.

26) Dyer was approximately 10 feet away from the pat-down search at all times relevant, and was in no way "impeding" a screener.

27) In fact, TSA policy specifically allows passengers to video record at the checkpoint, with exceptions not relevant here.

28) Dyer asked TSO, "What are you talking about?"

29) TSO left and immediately returned with her supervisor, Smith.

30) When TSO and Smith returned, Dyer asked Smith, "Are you not allowed to record?"

31) Smith responded, "No, no recording."

32) Dyer complied with Smith's order to cease recording.

33) Dyer would not have ceased recording had TSO and Smith not alleged that he was required by law to do so.

34) A reasonable person would have felt, and Dyer did feel, that he was not free to refuse and that failure to comply would have resulted in additional sanctions, including denial of access to the sterile area, fine, and/or arrest.

35) After Dyer complied, TSO requested to Smith that she order Dyer to delete the recording that he had made so far while TSO watched.

36) Smith ordered Dyer to delete the recording that he had made so far while TSO watched.

37) A reasonable person would have felt, and Dyer did feel, that he was not free to refuse and that failure to comply would have resulted in additional sanctions, including denial of access to the sterile area, fine, and/or arrest.

38) Dyer deleted the recording from his phone while TSO looked at the screen of his cell phone, as he had been ordered to do and to allow.

39) Dyer, his husband, and their child were allowed to leave the checkpoint to catch their flight.

40) Dyer was able to recover a copy of the deleted video from his phone after leaving the checkpoint.

## CLAIMS FOR RELIEF

### Count 1 – Fourth Amendment to the U.S Constitution
### Unlawful Search & Seizure
*(Both Defendants)*

41) The Fourth Amendment to the U.S. Constitution prohibits "unreasonable searches and seizures," and in general, a warrant or an exception to the warrant requirement is required before the government may seize a person and/or his property.

42) The "administrative search doctrine" allows the TSA to conduct some level of limited warrantless searches – during which incidental seizures may permissibly occur – under the theory that the searches are aimed at a public safety concern rather than uncovering evidence of criminality (or, in the alternative, under the theory that by presenting one's self at the TSA checkpoint, one is consenting to the search).

43) However, Dyer had already been cleared, and was thus no longer the subject of an administrative search, by the time he began recording.

44) Further, TSA policy, in recognition of the mandate of the First Amendment to the U.S. Constitution, allows Dyer to record at the checkpoint with exceptions not relevant here.

45) In ordering Dyer to cease doing something he had every legal right to do by falsely claiming authority under federal law, Defendants effected a seizure of Dyer's person and constructively seized his property by depriving him of the ability to use it.

46) In ordering Dyer to allow TSO to watch while Dyer delete the images (e.g., forcing Dyer to show TSO the screen of his phone and thus the contents of his photo library as he deleted a video), Defendants also conducted a search.

47) Given that the TSA's own policy unambiguously permitted Dyer to record his husband's pat-down, in addition to a resounding consensus of case law indicating that the First Amendment to the U.S. Constitution generally affords the public a right to record the actions of public officials in the performance of their duties in public spaces, no reasonable TSA screener would have thought that they were vested with the authority to order Dyer to cease recording or delete a recording, nor to order a search of the device used to make the recording.

48) Defendants are thus liable to Dyer for damages stemming from their unconstitutional seizure of person and property.

**Count 2 – First Amendment to the U.S Constitution**
**Freedom of Speech**
*(Both Defendants)*

49) As a general matter, the free speech clause of the First Amendment to the U.S. Constitution includes the right to record public spaces and, especially, public officials in the performance of their duties in public spaces.

50) Further, TSA policy, in recognition of the mandate of the First Amendment to the U.S. Constitution, allows Dyer to record at the checkpoint with exceptions not relevant here.

51) Dyer attempted to exercise his free speech clause rights at the date and time of the incident described in the complaint.

52) Without lawful authority, TSO and Smith thwarted the exercise of Dyer's exercise of free speech clause rights by prohibiting him from continuing to record and conspiring to order, and ordering, him to delete that video.

53) Given that the TSA's own policy unambiguously permitted Dyer to record his husband's pat-down, in addition to a resounding consensus of case law indicating that the First Amendment to the U.S. Constitution generally affords the public a right to record the actions of public officials in the performance of their duties in public spaces, no reasonable TSA screener would have thought that they were vested with the authority to order Dyer to cease recording or delete a recording.

54) Defendants are thus liable to Dyer for damages stemming from their unconstitutional violation of his free speech rights.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

i. Actual damages for loss of liberty, property, and emotional distress, in an amount to be determined by a jury.
ii. Punitive damages on all charges, in an amount to be determined by a jury.
iii. Cost of the action.
iv. Reasonable attorney's fees.
v. Any other such relief as the Court deems appropriate.

Dated: Richmond, VA

August 5th, 2019

Respectfully submitted,

_____/s/_____
Dustin W. Dyer, Esq.
*Pro Se* Attorney-Plaintiff
VA Bar #45334
9071 W. Broad St.
Henrico, VA 23294
E-mail: dustin@dyerimmigration.com Phone: (804) 377-7247
FAX:    (804) 377-7247


Jonathan Corbett, Esq. (*pro hac vice pending*)
CA Bar #325608
958 N. Western Ave. #765
Hollywood, CA 90029
E-mail: jon@corbettrights.com
Phone: (310) 684-3870
FAX:  (310) 684-3870