**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| DUSTIN DYER, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:19-cv-921-JAG |
| ) | |
| SHIRRELLIA SMITH, *et al.*, ) | |
| ) | |
|     Defendants. ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

The plaintiff has no implied right of action under the First or Fourth Amendments under

*Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 397 (1971). And assuming he did,

defendants Shirrellia Smith and Natalie Staton[1] (collectively, the "Defendants"), are immune from

suit under the First Amendment because any such right was not clearly established at the time of

the alleged violation. Because Defendants cannot be sued for personal damages under the First and

Fourth Amendments, and because the plaintiff cannot recover attorney's fees in a *Bivens* action,

this Court should dismiss plaintiff's Complaint with prejudice.

**Factual Allegations**

Plaintiff's Complaint alleges the Defendants, who are employees of the United States

Transportation Security Administration ("TSA"), violated his constitutional rights at the

Richmond International Airport's security checkpoint. Plaintiff alleges that he, his husband, and

---

[1] Plaintiff's Complaint names Shirrellia Smith and an "Unknown Transportation Security Officer" as individual defendants. The United States of America has previously identified the second unknown defendant as TSA Officer Natalie Staton. *See* ECF No. 11, at 1 n.1; ECF No. 7, at 2.

their children proceeded to the security checkpoint en route to boarding a flight. Compl. No. 1 at ¶¶ 15-17. Plaintiff alleges all of them had valid boarding passes, and that he and the children were screened "without delay." *Id.* ¶ 18. Because the plaintiff's husband was carrying infant formula, he was required to submit to a pat-down search. *Id.* ¶¶ 19-20. As the pat-down of his husband began, the plaintiff opened his cellphone camera and began recording the search. *Id.* ¶ 21. About a minute later, defendant Staton allegedly told the plaintiff that the pat-down "of [a] person's body" was "sensitive" and that his recording was "impeding" it. *Id.* ¶ 23. The plaintiff alleges that he was 10 feet away from the search, was not impeding it, so he continued recording. *Id.* ¶¶ 26-28.

Plaintiff alleges that Staton then left and returned with her supervisor, defendant Smith. *Id.* ¶ 29. Smith allegedly told the plaintiff that he was not allowed to record, and the plaintiff alleges that he complied with her request. Plaintiff further alleges that Staton then asked Smith to order the plaintiff to delete the video of the search, and Smith allegedly instructed the plaintiff to do so while Staton watched. *Id.* ¶¶ 35-36. The plaintiff alleges that as to both the instruction to stop recording and the instruction to delete the video, he felt that he had no choice and would not have complied but for the possible sanctions of refusing. *Id.* ¶¶ 34, 37. While Staton "looked at the screen of his cell phone," the plaintiff deleted the video. *Id.* ¶ 38. The plaintiff and his family then left the security checkpoint and proceeded to their flight. Plaintiff alleges that he was able to recover the deleted video from his phone. *Id.* ¶ 40.

Plaintiff asserts two claims against Smith and Staton individually. Count I asserts a violation of the plaintiff's Fourth Amendment rights by effecting a seizure of his person and property when they allegedly ordered him to stop recording and delete the video. *Id.* ¶¶ 41-48. Count II asserts a violation of the plaintiff's First Amendment right to record the search by allegedly ordering him to stop recording and to delete the video. *Id.* ¶¶ 49-54. As to both, the

2

plaintiff brings his claims under the amendments themselves. The plaintiff asks for compensatory damages, punitive damages, and an award of his costs and attorney's fees. *Id.* at 8.

**Argument**

## I.    Pleading standard on a Rule 12(b)(6) Motion

In considering a Rule 12(b)(6) motion to dismiss, this court accepts as true "all well-pleaded allegations," which are construed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). "[M]ore than labels and conclusions" are required to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). A plaintiff must allege sufficient facts to establish plausible grounds upon which the claim rests and "must be enough to raise a right to relief above the speculative level." *Id.* at 556. A court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013) (citation and internal quotation marks omitted).

The court need not accept "unwarranted inferences [and] unreasonable conclusions"; "a plaintiff must 'nudge[ ] [its] claims across the line from conceivable to plausible' to resist dismissal." *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570). The court need not accept as true the plaintiff's legal assertions. *Alami v. Lincoln Prop. Co.*, 61 F. Supp. 3d 551, 556 (E.D. Va. 2014) ("Though a court must accept the truthfulness of all factual allegations, it does not have to accept the veracity of bare legal conclusions.").

## II.    The Plaintiff has No *Bivens* Claim under the First or Fourth Amendment

### A.    *Private Rights of Action under* Bivens

The Defendants are employees of the United States, and the plaintiff sues them in their individual capacities. Compl. at ¶¶ 7-8. While Congress created 42 U.S.C. § 1983 to entitle a

3

person to damages if a *state* official violates his or her constitutional rights, "Congress did not create an analogous statute for federal officials." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017); *see Tun-Cos v. Perrotte*, 922 F.3d 514, 520 (4th Cir. 2019) (same). Prior to 1971, in fact, Congress provided no remedy at all for individuals whose constitutional rights were violated by federal agents. *Ziglar*, 137 S. Ct. at 1854.

In *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 397 (1971), the Supreme Court recognized a limited remedy for violations of the Fourth Amendment by federal agents by creating an implied cause of action under that amendment. In two subsequent cases, the Supreme Court recognized this implied cause of action for violations of the Fifth and Eighth Amendments as well. *See Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment); *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment); *see generally Ziglar*, 137 S. Ct. at 1855-56 (discussing the evolution and subsequent curtailing of the *Bivens* holding). *Bivens*, *Davis*, and *Carlson* "represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 137 S. Ct. at 1856.

The Supreme Court recently held that the judicial determination to create and enforce an implied cause of action under the Constitution against federal officials is a "significant step under separation-of-powers principles," and expanding *Bivens* is "now…disfavored." *Id.* at 1857. The Fourth Circuit was more blunt, calling the Supreme Court's holding in *Ziglar* "open hostility to expanding *Bivens* liability." *Perotte*, 922 F.3d at 521. Supreme Court precedent shows this disfavor. The Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants" and has refused to do so for over 30 years. *Ziglar* at 1857; *Perrotte*, 922 F.3d at 521 (noting that since 1980, "the Court has declined to countenance *Bivens* actions in *any* additional context"); *Vanderklok v. United States*, 868 F.3d 189, 198 (3rd Cir. 2017) (the authority

to imply a new tort not expressly authorized is "an authority rarely invoked"). This refusal to extend *Bivens* includes the First Amendment. *See Bush v. Lucas*, 462 U.S. 367, 390 (1983) (refusing to recognize a *Bivens* right of action under the First Amendment).

The Supreme Court left the door open a crack, though. When a party asserts an implied cause of action under a statute or the Constitution, "separation-of-powers principles are or should be central to the analysis. The question is who should decide whether to provide for a damages remedy, Congress or the courts?" *Ziglar*, 137 S. Ct. at 1857 (internal quotation marks omitted). To answer this question, the Supreme Court in *Ziglar* imposed a two-step framework for determining the viability of a *Bivens* claim. First, courts must decide whether the case before it "presents a new *Bivens* context"—i.e., whether the case is "different in any meaningful way from the three cases in which the Court has recognized a *Bivens* remedy." *Perrotte*, 922 F.3d at 522-23. Meaningful differences include expanding the remedy to a new category of defendants or to a new constitutional right. *Ziglar*, 137 S. Ct. at 1860.

If the context is new, a court must then "evaluate whether there are 'special factors *counseling hesitation* in the absence of affirmative action by Congress.'" *Perrotte*, 922 F.3d at 523 (quoting *Ziglar*, 137 S. Ct. at 1857). This inquiry asks "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Ziglar*, 137 S. Ct. at 1857-58. The court focuses on "whether Congress *might doubt* the need for an implied damages remedy." *Perrotte*, 922 F.3d at 525 (emphasis in original). If there are "sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy," a court "*must refrain* from creating the remedy." *Ziglar*, 137 S. Ct. at 1858 (emphasis added).

Relevant considerations include whether an "alternative remedial structure" exists, the potential "impact on governmental operations systemwide," the burden imposed by permitting personal suits against government employees, "projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal system are used" to implement policy, or if the features of the case otherwise urge caution against acting without congressional authorization. *Id.*; *Perrotte*, 922 F.3d at 526-27. "When an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them." *Ziglar*, 137 S. Ct. at 1857. In "most" cases, imposing "new substantive legal liability" should be left to Congress. *Id.* (internal quotation marks omitted). As several federal circuits have recognized, whether a factor counsels hesitation is a "'remarkably low'" threshold. *See De La Paz v. Coy*, 786 F.3d 367, 378 (5th Cir. 2015) (quoting *Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009)).

**B.      The Plaintiff's Claims Present New *Bivens Contexts***

This case is "different in a meaningful way from previous *Bivens* cases" because the plaintiff seeks personal damages against TSA agents for their actions while screening passengers at an airport security checkpoint. *See Perrotte*, 922 F.3d at 522-23. The Supreme Court has never extended *Bivens* to the actions of federal TSA agents. *See Vanderklok*, 868 F.3d at 199-200 (noting that the issue of extending *Bivens* to the "particular context" of airport security" and as to "this particular category of defendants, TSA screeners" was a new question). This case, then, seeks a *Bivens* remedy against a "new category of defendants." *Ziglar*, 137 S. Ct. at 1860.

The Supreme Court has also "never implied a *Bivens* action under any clause of the First Amendment." *Vanderklok*, 868 F.3d at 198; *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."). Last year, the Fourth

Circuit held a First Amendment claim under *Bivens* was a new context. *Doe v. Meron*, 929 F.3d 153, 169 (4th Cir. 2019); *see generally Taylor v. Cudd*, No. 7:18-cv-00765-TMC-JDA, 2020 U.S. Dist. LEXIS 41963, at *14-15 (D.S.C. Jan. 23, 2020) ("[N]umerous courts to have considered the issue after *Ziglar* have held that First Amendment claims present a new *Bivens* context.") (citing cases).

The same is true of the plaintiff's Fourth Amendment claim. While the plaintiffs in *Bivens* asserted a Fourth Amendment claim, the circumstances of the plaintiff's claim here differ significantly. *See Meron*, 929 F.3d at 169 (finding plaintiff's Fourth Amendment claim to be a new context); *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 58 (E.D.N.Y. 2017) ("Even though the Supreme Court has recognized causes of action in *Bivens* under the Fourth Amendment . . . that does not mean that any cause of action may lie under" that Amendment). The setting of an airport security checkpoint, the category of defendants as TSA employees, and the nature of the Fourth Amendment right asserted are sufficient to satisfy the new context standard under *Ziglar*. *See Ziglar*, 137 S. Ct at 1865 (saying the test is "easily satisfied"); *Linlor v. Polson*, 263 F. Supp. 36 613, 620 (E.D. Va. 2017) (finding a search-and-seizure claim against a TSA employee was a new context under *Ziglar*).

### C.    *Special Factors Exist to Caution Against Recognizing the Plaintiff's New* Bivens *Claims*

There are many factors that make Congress, not the court, better suited "to consider and weigh the costs and benefits of allowing a damages action to proceed" against the Defendants in this case. *See Ziglar* at 1857-58. The most obvious is TSA's mission and its distinct nature from typical policing. The TSA was created for the purpose of assisting in the country's national security efforts following the terrorist attacks of September 11, 2001, and its employees are "tasked with the critical" job of "securing our nation's airports and air traffic." *Vanderklok*, 868 F.3d at 206-07

(citing authorities). National security matters like these, the Supreme Court has repeatedly recognized, generally fall outside judicial purview and intervention. *Id.* at 206-07 (citing cases); *see Perrotte*, 922 F.3d at 526 (noting that the ICE agents' actions had "the natural tendency to affect diplomacy, foreign policy, and the security of the nation, which . . . counsel hesitation in extending *Bivens*.") (internal quotation marks omitted) (citing *Ziglar*).

This deference to Congress recognizes both the critical importance of national security matters, and the other branches' expertise in weighing decisions in that sphere. That is particularly the case when a claimant seeks money damages: "[n]ational-security policy is the prerogative of the Congress and President[,] and imposing damages liability would likely interfere with that prerogative by caus[ing] an official to second-guess difficult but necessary decisions concerning national-security policy." *Id.* at 207 (internal quotation marks omitted). The prospect of financial damages could "increase the probability that a TSA agent would hesitate in making split-second decisions about suspicious passengers." *Vanderklok*, 868 F.3d at 207. For good reason, then, courts have universally rejected calls to recognize *Bivens* actions in the military or national security contexts. *See Doe v. Rumsfeld*, 683 F.3d 390, 394 (D.C. Cir. 2012); *Vanderklok*, 868 F.3d at 207 and n.20 (citing cases).

Congressional oversight of the TSA also counsels hesitation. As the Third Circuit noted in *Vanderklok*, Congress is best suited to weigh the impact of litigation against TSA and "can tailor any remedy to the problem perceived." 868 F.3d at 208. But instead of providing remedies for individuals against TSA, Congress limited judicial review of TSA decisions. *Id.* (citing 49 U.S.C. §§ 46110 and 44935 (note)). And in authorizing the TSA to establish security programs at airports and providing extensive guidance to fulfill that mission, Congress chose not to provide any remedy for passengers against TSA employees. *See* 49 U.S.C. § 44903. In none of these legislative

8

enactments did Congress suggest that the law enforcement officers providing air safety security be subject to personal liability from air travelers or airport visitors. In addition, as was the case in *Perrotte* as to ICE, "the frequent amendment of [49 U.S.C. § 44903] and its repeated refusal to provide a damages remedy . . . 'is itself a factor counseling hesitation.'" *Perrotte*, 922 F.3d at 527 (quoting *Ziglar*, 137 S. Ct. at 1865); *see Hernandez v. Mesa*, 885 F.3d 811, 820-21 (5th Cir. 2018) (finding "Congress's failure to provide a federal remedy" to be intentional); *Corbett v. Trans. Sec. Admin.*, 568 F. App'x. 690, 700-01 (11th Cir. 2014) (holding that Congress did not waive immunity under the Federal Tort Claims Act for claims against TSA agents).

Moreover, Congress' interest in air safety is particularly acute when it comes to screening passengers at security checkpoints. *See* 49 C.F.R. § 1540.109 ("No person may interfere with, assault, threaten, or intimidate screening personnel in the performance of their screening duties under this subchapter."); *Mocek v. City of Albuquerque*, No. CIV 11-1009 JB/KBM, 2013 U.S. Dist. LEXIS 10676, at *166-67 (D.N.M. Jan. 14, 2013) (noting TSA regulations regarding "distractions" at security checkpoints and its potential impact on security) (citing 67 Fed. Reg. 8340-01). How to weigh these competing interests with those of passengers forced to undergo screening at airports is a quintessential legislative task that should be left to Congress. *See Ziglar*, 137 S. Ct. at 1857 ("When an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them."); *Vanderklok*, 868 F.3d. at 209 (finding that as to TSA agents, there is reason to "fear that a general *Bivens* cure would be worse than the disease").

There is more still. The practicality of enforcing a *Bivens* claim against TSA agents is unclear. As the court in *Vanderklok* noted, only specially designated TSA "officers" operate like police and are thus trained on constitutional issues like probable cause and reasonable suspicion.

*Id.* at 208-09 (citing 49 U.S.C. § 44903 and 49 C.F.R. §§ 1542.213 and .215). Congress would presumably want all TSA employees trained on these constitutional issues if they are to be subject to liability for violating them. That a *Bivens* remedy here would be both "doctrinally novel and difficult to administer" constitutes an additional special factor. *See Alvarez v. U.S. Immigration & Customs Enf't*, 818 F.3d 1194, 1210 (11th Cir. 2016). These practical considerations make it difficult to assess the "impact on governmental operations systemwide" if a *Bivens* remedy is provided against TSA agents. *Ziglar*, 137 S. Ct. at 1858.

Finally, Congress appears to have provided an alternative remedial structure to claimants like the plaintiff here, albeit a non-judicial one. In 49 U.S.C. § 44926, Congress directed the Secretary of the Department of Homeland Security to establish a process by which individuals who have been unfairly screened or delayed in their air travel have redress, and to establish an Office of Appeals and Redress to execute that policy. The resulting program, the Travelers Redress Inquiry Program, "is essentially a clearinghouse for traveler grievances." *Latif v. Holder*, 686 F. 3d 1122, 1125 (9th Cir. 2012). In *Vanderklok*, the Court held that although the program appeared to be principally related to passengers' inclusion on the "No-Fly List," on its face it provided redress to passengers delayed or detained in their travel through airports en route to boarding. *Vanderklok*, 868 F. 3d at 204-05. This "alternative remedial structure" also constitutes a special factor under *Ziglar*. 137 S. Ct. at 1858.

With so many factors counseling hesitation, this Court should reject the plaintiff's invitation to recognize a new *Bivens* remedy to support his First and Fourth Amendment claims. Like the complaint in *Perrotte*, the plaintiff's Complaint "raises the substantial question of whether Congress would want the plaintiff[] to have a money damages remedy against [TSA] agents for their allegedly wrongful conduct when enforcing" congressionally-mandated air safety screening

procedures. 922 F.3d at 528. Respecting Congress' interest in this domain compels dismissing the plaintiff's Complaint with prejudice.

### III.     The Defendants are Entitled to Qualified Immunity as to the First Amendment Claim

In the event the Court thinks a *Bivens* remedy exists here, it should nevertheless dismiss the plaintiff's First Amendment claim. The plaintiff alleges that the Defendants violated the free speech clause of the First Amendment by ordering him to stop recording the pat-down search and to delete the video he had taken. Compl. at ¶ 52. Because the nature of the First Amendment right to record the actions of law enforcement was not clearly established at the time of the Defendants alleged conduct, they are entitled to qualified immunity.

Qualified immunity "shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Qualified immunity protects a government official when his or her conduct does not violate clearly established constitutional rights. *Figg v. Schroeder*, 312 F.3d 625, 635-636 (4th Cir. 2002). "[O]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciarello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

The threshold question is whether the plaintiff alleges facts sufficient to find that a constitutional violation occurred. *Figg*, 312 F.3d at 635. If not, the inquiry ends. *Id.* If so, the court then determines "whether the constitutional right was clearly established in the specific context of the case—that is, [whether] it was clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted." *Clem v. Corbeau*, 284 F.3d 543, 549 (4th Cir. 2002) (internal quotation marks omitted). This inquiry is objective: it does not depend on an officer's subjective beliefs, but on what "a hypothetical, reasonable officer would have

11

understood under those circumstances." *Figg,* 312 F.3d at 635. This ensures that an officer is not subject to liability when "the legality of a particular course of action is open to reasonable dispute." *Id.* To be clearly established, the "contours" of the right in question "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "In other words, existing precedent must have placed the . . . constitutional question beyond debate." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (internal quotation marks omitted). To find this precedent, a court "need not look beyond" the decisions of the Supreme Court, the United States Court of Appeals for the Fourth Circuit, and the Supreme Court of Virginia. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999).

The Fourth Circuit has never held that there is a First Amendment right to video record law enforcement officers. *See Garcia v. Montgomery County*, 145 F. Supp. 3d 492, 506-07 (D. Md. 2015). The Supreme Court has not either. *See id.* at 506. But many courts across the country have, including several district courts within the Fourth Circuit. *See id.* at 508 ("[V]ideo recording of police activity, if done peacefully and without interfering with the performance of police duties, is protected by the First Amendment."); *Szymecki v. City of Norfolk*, No. 2:08cv142, 2008 U.S. Dist. LEXIS 139651, at *9 (E.D. Va. Oct. 21, 2008) ("[T]he First Amendment protects the video recording of the actions of police office, subject to reasonable time, place, and manner restrictions."); *see generally Glik v. Cunniffe*, 655 F.3d 78, 84 (1st Cir. 2011) (same); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) (same).

Assuming this Court agreed that there is a constitutional right to video record the Defendants in the performance of their duties as TSA agents,[2] the right was not clearly established

---

[2] There is good reason to differentiate recording TSA agents in the performance of their national security duties from the recording of police in public such that the qualified immunity analysis could end with a finding that no First Amendment violation is alleged. *See Mocek v. City*

in the Fourth Circuit. In *Szymecki v. Houck*, 353 F. App'x. 852 (4th Cir. 2009), the only decision from the Fourth Circuit on the subject, the Fourth Circuit reviewed a district court's decision that the "right to record police activities on public property was not clearly established." *Id.* at 852-53. The Fourth Circuit agreed and affirmed the district court. *Id.* It appears this holding remains the last word from the Fourth Circuit on the question of a First Amendment right to record law enforcement. *See Benzing v. North Carolina*, No. 3:17-CV-000619-KDB-DCK, 2020 U.S. Dist. LEXIS 110193, at *13 and n.2 (W.D.N.C. June 23, 2020) (citing *Szymecki*).

The right at issue here is even more particularized: the plaintiff claims a right to record TSA agents in a non-public forum. *See Int'l Soc. for Krisha Consciousness, Inc. v. Lee*, 505 U.S. 672, 679-83 (1992) (holding that an airport is a non-public forum for First Amendment purposes); *Hope*, 536 U.S. at 739 (holding that the "contours" of the right must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right"); *Mocek v. City of Albuquerque*, No. CIV 11-1009 JB/KBM, 2013 U.S. Dist. LEXIS 10676, at *158 (D.N.M. Jan. 14, 2013) (holding that if the plaintiff's filming of TSA agents in an airport "is viewed as an exercise of his right to record officials in the course of carrying out their duties in public, the Supreme Court has not made an unambiguous announcement that such conduct is uncontested First Amendment activity") (internal citations and quotation marks omitted). Because this case involves more than just "the right to record police activities on public property," the existence of the right is even less clear.

As of the 2019 events at issue, then, no "legal trail exists in Supreme Court or Fourth Circuit precedent" to hold that the right to video record TSA agents is a clearly established one.

---

*of Albuquerque*, No. CIV 11-1009 JB/KBM, 2013 U.S. Dist. LEXIS 10676, at *160-71 (D.N.M. Jan. 14, 2013) (finding that the plaintiff had no First Amendment right to record TSA agents at a security checkpoint).

*Garcia*, 145 F. Supp. 3d at 509. That the right may be clearly established in other jurisdictions is immaterial. *See Edwards*, 178 F.3d at 251. Because it could not have been clear to the Defendants "that the conduct in which [they] allegedly engaged was unlawful in the situation [they] confronted," *Clem*, 284 F.3d at 549, they are entitled to qualified immunity and the plaintiff's First Amendment claim should be dismissed.

## IV.    The Plaintiff Has No Right to Attorney's Fees or Costs

Rule 54 requires the plaintiff to specify the "statute, rule, or other grounds entitling" him to an award of fees. Fed. R. Civ. P. 54(d)(2)(B)(ii). Rule 54 also states that in actions against the United States, its officers or agencies, costs can only be awarded "to the extent allowed by law." Fed. R. Civ. P. 54(d)(1). Absent a statute that provides for them, attorney's fees are generally not recoverable. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001).

The plaintiff does not identify any support for his request for the award of attorney's fees, and there is none. It is true that federal law allows the award of attorney's fees to a prevailing party in § 1983 proceedings implicating civil rights. 42 U.S.C. § 1988. But this is not an action under § 1983, and neither section 1988 nor any other statute permits the award of fees in a *Bivens* action. *Id.*; *Unus v. Kane*, 565 F.3d 103, 126 (4th Cir. 2009); *Harrington v. Wells*, No. 2:15-cv-41, 2016 U.S. Dist. LEXIS 151318, at *8 (S.D. Ga. Nov. 1, 2016) (citing cases). To the extent the court finds any claims survive dismissal, it should dismiss the plaintiff's request for fees and costs.

## Conclusion

Congress, not courts, should decide whether the competing interests at play in asserting claims against TSA agents justify a damages remedy for passengers like the plaintiff. The Supreme Court's "open hostility" to expanding *Bivens* compels dismissal of the plaintiff's Complaint

because the plaintiff has no private right of action against the Defendants. *See Perrotte*, 922 F.3d

at 521. The Court should grant this motion to dismiss and dismiss this case with prejudice.

Respectfully submitted,

SHIRRELLIA SMITH and NATALIE STATON

By: ___/s/_____
William W. Tunner (VSB #38358)
William D. Prince IV (VSB #77209)
John P. O'Herron (VSB #79357)
THOMPSON MCMULLAN, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Tel: (804) 649-7545
Fax: (804) 780-1813
wtunner@t-mlaw.com
wprince@t-mlaw.com
joherron@t-mlaw.com

*Counsel for Defendants Shirrellia Smith and*
*Natalie Staton*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 7th day of August, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Jonathan Corbett, Esquire (admitted *pro hac vice*)
958 N. Western Avenue #765
Hollywood, CA 90029
Tel: (310) 684-3870
Fax: (310) 684-3870
jon@corbettrights.com
*Counsel for Plaintiff*

Dustin W. Dyer, Esquire
9071 W. Broad Street
Henrico, VA 23294
Tel: (804) 377-7247
Fax: (804) 377-7247
dustin@dyerimmigration.com
*Pro Se Attorney – Plaintiff (Local Counsel)*

By: ____/s/_____
William D. Prince IV (VSB #77209)
THOMPSON MCMULLAN, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Tel: (804) 649-7545
Fax: (804) 780-1813
wprince@t-mlaw.com
*Counsel for Defendants Shirrellia Smith and
Natalie Staton*

16