IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| Dustin Dyer<br>*Plaintiff*<br><br>v.<br><br>Shirrellia Smith *et al.*<br>*Defendants* | Case No. 3:19-CV-921 (JAG)<br><br>**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

**I.     Introduction**

Plaintiff's complaint asks the Court for one straight-forward request: to uphold his constitutional right to record government officials in public.  On August 7th, 2020, Defendants moved to dismiss the complaint not on the basis that they did not violate his rights, but on the basis that there is no remedy available to him.  To summarize a 16-page memorandum in a sentence, Defendants argue that *Bivens* remedies are not available in the context of TSA abuse, and that even if they were, qualified immunity would save them because the right to film them was not clearly established.

However, for over 200 years, a cornerstone of our jurisprudence has been that "[i]t is a settled and invariable principle, that every right, when withheld, must have a remedy, and every injury its proper redress." *Marbury v. Madison*, 5 U.S. 137, 147 (1803).  For reasons that Plaintiff will explain below, the Court need not break substantial new ground to afford Plaintiff a remedy, nor would providing a remedy offend the Supreme Court's delicate sensibilities regarding extension of the doctrine of *Bivens* or its deferential application of qualified immunity. Defendants' motion should, therefore, be denied.

II. **Standard of Review & Factual Allegations**

For the purpose of deciding this motion, Defendants adequately describe the facts presented in the complaint as well as the standard of review[1]. Mot. to Dismiss, pp. 1 – 3. Plaintiff will avoid being repetitive.

III. **Argument**

A. *It Was Clearly Established That Filming Government Officials in Public is a First Amendment-Protected Activity*

Over the last decade, the presence of recording devices sitting in the pockets of nearly every person in the country has become ubiquitous. And, over the last decade, many federal courts have considered whether the First Amendment provides a right to record public officials doing their job in public places. At least at the Court of Appeals level, literally every one of them has concluded the answer is "yes."

Defendants have cited several of these decisions. Mot. to Dismiss, p. 12 (*citing* decisions of two districts within this circuit as well as the Courts of Appeals for the 1st and 11th Circuits). Plaintiff will add a few more: *Fields v. City of Phila.*, 862 F.3d 353 (3rd Cir. 2017); *Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017); *ACLU of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012); *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995).

---

[1] Defendants' description of the standard of review is embedded within a section labeled "Argument," subsection I. *See* Mot. to Dismiss, p. 3.

Despite the Fourth Circuit not having spoken directly to the matter, district courts within the circuit have been willing to find that the law was clearly established:

> "That [Plaintiff] had a First Amendment right to record these activities is well-supported by relevant caselaw. Indeed, as this Court noted in *Garcia v. Montgomery Cty., Maryland*: "based on the fairest reading of Supreme Court precedent, and the great weight of authority from other circuits, it seems fairly well-settled in 2015 that there is a First Amendment right to video record police officers as they carry out their public duties." *Garcia v. Montgomery Cty., Maryland*, 145 F. Supp. 3d 492, 509 (D. Md. 2015).

*Mills v. PPE Casino Resorts Md., LLC*, Case No. 15-CV-495, at *11 (D. Md., May 8th, 2017). This is because in addition to looking to the Fourth Circuit and Supreme Court, the Court "may look to a consensus of cases of persuasive authority from *other jurisdictions.*" *Haze v. Harrison*, No. 18-7340, at *10, n. 4 (4th Cir., June 8, 2020) (*quotations and citations omitted*); see also Wilson v. Layne, 526 U.S. 603 (1999) (origin of "consensus of cases").

To recap, the 1st, 3rd, 5th, 7th, 9th, and 11th Circuits have all found a right to record public officials, as have district courts in this circuit. No circuits have dissented, and all of these circuit court decisions were made prior to the incident that gave rise to the complaint. Plaintiff submits that the Court should find both that there is a general right to record public officials in the public performance of their duties, and that this was clearly established in Virginia in 2019.

The only additional "wrinkle" is whether it makes a difference that the public official, in this case, is a TSA screener at a TSA checkpoint. Defendants, in a footnote, write that "[t]here is good reason to differentiate recording TSA agents in the performance of their national security duties from the recording of police in public," but fail to explain what that "good reason" is. First, Plaintiff notes that the agency itself has no problem with recording at the checkpoints, and specifically allows it. See "Can I film and take photos at a security checkpoint?" Transp. Sec.

Admin., https://www.tsa.gov/travel/frequently-asked-questions/can-i-film-and-take-photos-security-checkpoint (Retrieved Aug. 21st, 2020) ("TSA does not prohibit photographing, videotaping or filming at security checkpoints, as long as the screening process is not interfered with or sensitive information is not revealed."). If the agency itself doesn't think there is a reason to exempt TSA screeners from the general presumption that public officials may be filmed in the performance of their public duties, why should the Court find otherwise?

Second, despite Defendants' continued invocation of "national security" and "split-second decisions" to drive home the importance of the jobs of TSA screeners, what they neglect is that the job of a TSA screener is entirely less likely to turn on "split-second decisions" than that of a police officer making an arrest on a street. We require the police officer to deal with being filmed while violent individuals are trying to escape or harm them or others, to say the least. This is literally life-or-death and is a regular occurrence for any officer in an urban setting. TSA, on the other hand, can pause the screening process and check in with a supervisor if at any point they are unsure of the situation. With respect to the Third Circuit's decision in *Vanderklok*, there are no "split-second decisions" at the TSA checkpoint. *Vanderklok v. United States*, 868 F.3d 189, 207 (3rd Cir. 2017). TSA screeners are not tasked with taking down terrorists as they blast their way through an airport; they are tasked with x-raying bags and sending passengers through metal detectors. The Court should not credit any allegation of "split-second" decisions without testimony and evidence (*i.e.*, not in a Rule 12 motion). And regardless of how important or expeditious the decisions of TSA need to be, Defendants utterly fail to even attempt to discuss how having someone filming from 10 feet away would influence those decisions. Defendants cannot do so without producing evidence, and now is not their opportunity to do so.

B. *Defendants Make No Qualified Immunity Argument As To the Fourth Amendment Claim*

In addition to simply forcing Plaintiff to discontinue his First Amendment-protected activity – using his cell phone camera to record government officials in the public discharge of their duties – they forced Plaintiff to use his phone to delete the video, effectively seizing the phone, the video, and Plaintiff's person by conscripting him to complete a task without consent. *See* Complaint, ¶ 34 ("A reasonable person would have felt, and Dyer did feel, that he was not free to refuse and that failure to comply would have resulted in additional sanctions, including denial of access to the sterile area, fine, and/or arrest."). There is little question that, assuming the facts alleged in the complaint to be true, Plaintiff makes out a plausible claim for the violation of his Fourth Amendment rights. Defendant does not even argue that they may have had a right to force someone to delete a video from their phone, and this would be true *even if Plaintiff had no First Amendment right to create the video in the first place*.

Plaintiff respectfully points out that Defendants specifically cabin their qualified immunity argument "to the First Amendment Claim." Mot. to Dismiss, p. 11 (*see* title for subsection III). Perhaps this was an oversight, or perhaps it is because it is not even arguable that no reasonable government official would force someone to delete a video from their phone absent a specific grant of lawful authority not present here. Either way, even if the Court grants Defendants' motion as to qualified immunity, the Fourth Amendment claims survive[2].

---

[2] Plaintiff also reminds Defendants that arguments as to new matters may not be initiated in a reply brief.

C. <u>An Unlawful Fourth Amendment Seizure by a Federal Officer Is Not a New Context Simply Because it Happens At an Airport – But Even If It Was, No Special Factors Counsel Hesitation</u>

The original *Bivens* case allowed a remedy for Fourth Amendment search/seizure violations by federal officers, and this continues to be the primary use case for *Bivens* today. *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). Whether the Court should extend *Bivens* to the First Amendment is a far trickier question than whether it may hear a Fourth Amendment *Bivens* claim against a TSA screener, so Plaintiff begins with the latter.

The first question before the Court is whether the complaint asks the Court to apply *Bivens* to a new context. The Supreme Court explains:

> "The proper test for determining whether a case presents a new *Bivens* context is as follows. If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the <u>rank of the officers involved</u>; the <u>constitutional right at issue</u>; the <u>generality or specificity of the official action</u>; the <u>extent of judicial guidance as to how an officer should respond</u> to the problem or emergency to be confronted; the <u>statutory or other legal mandate under which the officer was operating</u>; the <u>risk of disruptive intrusion by the Judiciary</u> into the functioning of other branches; or the <u>presence of potential special factors</u> that previous *Bivens* cases did not consider."

*Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859-60 (2017) (emphasis added). If the Court answers this question in the negative, the Bivens claim may proceed; otherwise, the Court must take a second look at "special factors" in order to decide. *Id*.

Defendants do not attempt the "new context" analysis required by *Ziglar*, so Plaintiff will start the ball rolling. Of the seven examples given in *Ziglar*, and comparing this case to *Bivens*, three of them obviously come down in favor of Plaintiff: the rank of the officers appears to be the same (low-ranking), the constitutional right is the same (Fourth Amendment search/seizure), the

generality or specificity of the official action is the same (directed specifically at the plaintiffs). As to the remainder:

1. TSA does not operate under the exact same "statute or legal mandate" as narcotics officers, but then again, neither do FBI agents, parks police, ATF officers, *etc.*, derive their power from the exact same statute, yet there is no question *Bivens* applies to them. The Court should consider, more generally, that both narcotics officers searching a home and TSA screeners searching bags have something in common: their job is to conduct searches of the public pursuant to federal law. And both types of searches can generate similar claims: that someone was falsely seized, that someone's property was destroyed, that something that should not have been seized was seized, *etc*.

2. Requiring federal employees to respect the constitutional rights of the citizens is not much of a "judicial intrusion." Plaintiff submits that courts ensuring that federal officers don't trample the Bill of Rights is the *minimum* level that the courts should intrude upon the executive branch. It is a natural consequence of the judicial review allowed, and perhaps demanded, by *Marbury v. Madison*.

3. As discussed in the qualified immunity section *supra*, there is little question that there was insufficient judicial guidance to put a TSA screener on notice that they can't force people to delete videos from their cell phones at the checkpoint. So little that Defendants did not even argue it.

This leaves us with "special factors," for which Defendants have named a few: 1) that TSA screening is different from typical policing because of national security implications, 2) that Congress has not created its own remedy, 3) that it would be impractical for TSA to operate if it were subject to *Bivens* liability, and 4) that an alternative remedial structure exists. Mot. to

Dismiss, pp. 7 – 11.  It should be noted that it is Defendants' burden to demonstrate the existence of these special factors.  *Carlson, v. Green*, 446 U.S. 14, 18 (1980) ("…when *defendants* demonstrate…," *emphasis added*).  Defendants have done little to cite cases showing their proposed special factors, even if they were true, are actually reasons to counsel hesitation.  *Cf. Doe v. Meron*, No. 18-2024 (4th Cir., July 3, 2019) (applying *Bivens* to military counsels hesitation; applying *Bivens* extraterritorially counsels hesitation) to Mot. to Dismiss.  Notwithstanding, Plaintiff addresses each of these alleged factors in turn.

As to the first, TSA screening is not the same as policing, true, but it is unclear why this means that TSA screeners should be allowed to escape liability for constitutional violations while, *e.g.*, ATF agents cannot.  Both agencies are charged with, perhaps most importantly, making sure Americans don't die in explosions.  In fact, in this mission, their jobs may overlap.  Consider if both agencies know a person is about to enter an airport with a bomb, but make a mistake as to the identity of the person.  If a TSA screener at a checkpoint conducts an unreasonable search of the innocent person, they will have no liability, but if an ATF agent entered the checkpoint and got to the innocent person first, they would be fully liable.  That makes no sense.  Baggage screening is not a "national security" matter in the same way as a clandestine CIA operation, a covert military exercise, a diplomatic effort, *etc.*, where it would actually make sense to hesitate to let a matter air itself in court.  No, TSA screening is a "national security" matter in the same way the ATF trying to prevent the next Oklahoma City bombing is a national security matter, and they should both be held liable for their errors in the same way.  Given the state of qualified immunity law today, this is not a massive burden for either agency, as their errors must be manifestly unreasonable before they will be held liable.

As to the second, Congress failing to create remedies is the whole reason *Bivens* exists at all. This is not a factor counseling hesitation: failure to create a useful remedy is a reason in the other direction.

As to the third, Defendants complain that allowing *Bivens* remedies against TSA screeners will burden the agency with training TSA employees on constitutional issues. Mot. to Dismiss, p. 10. How this would be a bad thing escapes Plaintiff, but Defendants failed to allege that, let alone produce evidence of: 1) TSA screeners not already receiving training on constitutional issues[3], and 2) that the requirement of any additional training necessary would be overly burdensome.

And, as to the fourth, Defendants argue that an "alternative remedial structure" exists to provide Plaintiff some sort of remedy. Mot. to Dismiss, p. 10. They point to the "Travelers Redress Inquiry Program" ("TRIP"), *id.*, which essentially allows travelers to file complaints about no-fly list or other problems encountered with TSA. What Defendants fail to note is that TSA has no duty to even respond to TRIP inquiries, let alone provide *any* meaningful investigation or due process. The program does not offer monetary compensation to those making complaints, and the most a TRIP complaint could possibly generate for Plaintiff is an apology and non-binding promise to do better next time. TRIP may be useful as an intra-agency challenge to one's status on the no-fly list, but it is not useful to remedy a constitutional tort. And, can one imagine if federal law enforcement set up a similar complaint system, then told the courts that their new "remedial structure" vitiates the need for *Bivens* remedies against it? TRIP is simply not a remedy for Plaintiff in any meaningful way. "The unavailability of monetary damages also demonstrates that

---

[3] Plaintiff sincerely hopes that Defendants are not saying these federal officers, empowered to conduct searches of the public, are entirely untrained as to the Constitution.

the [BOP's agency complaint process] is an inadequate alternative process." *Callahan v. Fed. Bureau of Prisons*, No. 19-5210, at *16 (6th Cir., July 16, 2020) (Moore, J., *dissenting*).

Accordingly, the Court would be reasonable to find that Plaintiff does not present a new *Bivens* context with regards to the Fourth Amendment claims. But even if a new context is presented, the Court must continue to the "special factor" inquiry, and Defendants have presented no factors that actually counsel hesitation to make the extremely limited extension to *Bivens* required to afford some sort of remedy to Plaintiff for his injuries.

### D. *A First Amendment Claim May Be a New* Bivens *Context, But It Is a Worthy One*

The Fourth Circuit, pre-*Ziglar*, was willing to allow First Amendment *Bivens* claims against TSA screeners. *Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013). Post-*Ziglar*, it seems likely a First Amendment claim would be a "new" *Bivens* context (despite having proceeded in this circuit 7 years ago). However, as discussed above, the inquiry does not stop there: the Court must consider whether there are any special factors counseling hesitation, and, if not, may allow the new *Bivens* context to proceed.

The special factors raised by Defendants as already discussed for the Fourth Amendment claims are unworthy of counseling hesitation on the First Amendment claims for the same reasons. The work of TSA screeners is not so unique and special as to be deserving of what functionally amounts to absolute immunity from tort liability. To be perfectly clear: if the Court refuses to allow a *Bivens* claim to proceed here, there is <u>no</u> remedy against TSA screeners for the injuries sustained by Plaintiff. Defendants concede that the Federal Tort Claims Act did not waive sovereign immunity for the torts of TSA screeners. Mot. to Dismiss, p. 9. TSA screeners are

certainly not liable under state law for torts committed when acting in furtherance of their official duties.  28 U.S.C. § 2679(d) (the "Westfall Act").  It is either *Bivens* or nothing; *Bivens* or our First Amendment rights no longer exist in an airport (and probably most other settings involving federal tortfeasors, as well).  The Court should hold that it is appropriate to create a new *Bivens* context here because failure to do so would leave Americans holding a right without a remedy.

### E.  *Attorney's Fees Are Not A "Claim" Subject to a Rule 12(b)(6) Motion*

To the extent that attorney's fees or costs may not be allowed, but were asked for in the complaint, it is not a "claim for relief" subject to Fed. R. Civ. P. Rule 12(b)(6), under which Defendants' motion is made.  If Plaintiff prevails, surely the Court will give the parties an opportunity to argue over fees and costs at that time; until then, there is no need to argue the matter.

### IV.     <u>Conclusion</u>

The Court should decline Defendants' self-serving invitation to hold that no remedy exists when TSA screeners abuse their authority at the checkpoint and infringe on the constitutional rights of travelers. Such a drastic limitation would invite future misconduct, would deprive injured parties of their day in court, would devalue one of the most precious parts of the Bill of Rights, and is not compelled by the precedent of the courts above.

Accordingly, the Court should **deny** Defendants' motion to dismiss and **order** them to answer the complaint within 21 days of its opinion.

Dated: Richmond, VA

      August 21st, 2020

Respectfully submitted,

_____/s/_____
Jonathan Corbett, Esq.
Attorney for Plaintiff (Lead Counsel)
CA Bar #325608 (*pro hac vice granted*)
958 N. Western Ave. #765
Hollywood, CA 90029
E-mail: jon@corbettrights.com
Phone: (310) 684-3870
FAX:   (310) 684-3870

_____/s/_____
Dustin W. Dyer, Esq.
*Pro Se* Attorney-Plaintiff (Local Counsel)
*Admitted E.D. Va.*
9071 W. Broad St.
Henrico, VA 23294
E-mail: dustin@dyerimmigration.com
Phone:   (804) 377-7247
FAX:     (804) 377-7247