**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| DUSTIN DYER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:19-cv-921-JAG |
| ) | |
| SHIRRELLIA SMITH, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Plaintiff's opposition to Defendants' Motion to Dismiss comes down to policy. For his constitutional rights to mean anything, he argues, there must be a *Bivens* remedy to enforce them against federal officials like Defendants. To achieve this policy end, Plaintiff strays from binding precedent of both the Fourth Circuit and the Supreme Court of the United States and articulates a novel framework highly solicitous of expanding *Bivens* liability. Because he has no *Bivens* remedy, the Court should grant Defendants' Motion to Dismiss.

**I.      Plaintiff Has No *Bivens* Claim**

In response to Defendants' Motion to Dismiss, Plaintiff argues his First and Fourth Amendment claims satisfy both elements of *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), and that he is entitled to the "highly 'disfavored'" extension of a *Bivens* remedy. *See Tun-Cos v. Perrotte*, 922 F.3d 514, 518 (4th Cir. 2019).

      *a.      Plaintiff invokes a novel "new context" analysis*

The question of whether a case presents a new *Bivens* context is basic: is a case different in *any* "meaningful way" from the three cases in which the Supreme Court of the United States

has recognized a *Bivens* claim. *Perrotte*, 922 F.3d at 522-23 (citing *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859-60 (2017)). As the Fourth Circuit stated in *Perrotte*, the Supreme Court's "expressed caution about extending the *Bivens* remedy" makes this inquiry "easily satisfied." *Id.* at 523.

Plaintiff concedes his First Amendment claim presents a new context. Opp. Br. (ECF No. 21) at 10. But after claiming that Defendants did not "attempt the 'new context' analysis required by *Ziglar*" for his Fourth Amendment claim, *id.* at 6,[1] Plaintiff presents a novel one untethered to precedent. In *Ziglar*, the Court provided a non-exhaustive list of the kinds of case differences that amount to a new context. 137 S. Ct. at 1859-60. According to the Court, "[a] case might differ in a meaningful way" from the three prior *Bivens* cases if one of the listed examples was true. *Id.* Plaintiff seems to suggest, however, that each example should be weighed in some sort of balancing test. So, for example, Plaintiff argues that "three of them obviously come down in favor of Plaintiff" and that the remainder need not concern the court because there are sufficient policy justifications for providing him a *Bivens* remedy. Opp. Br. at 6-7.

This analysis conflates the objective "new context" inquiry with whether special factors counsel hesitation on the part of judicial recognition of an implied remedy. The Court in *Ziglar* stated that any one of its provided examples might be sufficient to establish a new context. 137 S. Ct. at 1859-60. Indeed, the point of the inquiry is to determine whether a given case amounts to an extension of what the Supreme Court has previously recognized in the *Bivens* sphere. *See id.* at 1856-57. Applying the analysis as if it were a balancing test of factors or policy choice ignores this purpose.

For obvious reasons, courts have found that even one meaningful difference is sufficient. In *Perotte*, for example, the Fourth Circuit identified several meaningful differences, but stated

---

[1] *But see* Memo. in Support of Mot. to Dismiss (ECF No. 19) at 7.

that providing a *Bivens* remedy to a "new category of defendants" was alone dispositive to the question. 922 F.3d at 524-25 (citing *Ziglar*, 137 S. Ct. at 1857); *see also Vanderklok v. United States*, 868 F.3d 189, 199-200 (3rd Cir. 2017) (finding new context because TSA agents was a new category of defendants); *Doe v. Meron*, 929 F.3d 153, 169 (4th Cir. 2019) (finding plaintiff's Fourth Amendment claim to be a new context because rank of officers, legal mandate under which officers were operating, and category of defendants was new); *Farah v. Weyker*, 926 F.3d 492, 499-500 (8th Cir. 2019) (holding that although "some similarities" existed with *Bivens*, three meaningful differences amounted to a new context).

Moreover, even if more than one meaningful difference was required, there are several here. *See* Memo. in Support. of Mot. to Dismiss (ECF No. 19) at 7. Compared to *Bivens*, this case presents a new category of defendants (TSA agents), a different legal mandate under which Defendants operated (42 U.S.C. § 44903), the particular Fourth Amendment violation alleged (forcing the deletion of a video), and the circumstances of the alleged violation (at an airport security checkpoint). These are sufficient to present a new *Bivens* context. *See generally Cantu v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019) (identifying several meaningful differences between *Bivens* and the asserted Fourth Amendment claim); *Doe*, 929 F.3d at 169 (same).

### b.   *Plaintiff invokes a novel "special factors" analysis*

Plaintiff also flips the "special factors" analysis on its head. Instead of analyzing whether there "might" be any reason to "doubt the need for an implied damages remedy," *Perotte*, 922 F.3d at 525, Plaintiff demands conclusive proof. To Plaintiff, Congressional silence throughout the law governing the TSA suggests there should be a *Bivens* remedy, it "makes no sense" to permit TSA agents to escape personal liability for damages, and training TSA agents in constitutional law issues affecting their jobs would be a positive result. Opp. Br. at 8-9. But the question under *Ziglar*

is, who should make these determinations? If there are reasons that "make it less probable that Congress would want the Judiciary to entertain a damages suit in a given case," a court should decline to create a *Bivens* remedy. *Ziglar*, 137 S. Ct. at 1858. A factor that makes it "less probable" or "counsel[s] hesitation" is a much shorter hurdle than Plaintiff's argument makes it out to be. *Id.* at 1857-58.

Plaintiff's arguments for extending *Bivens* liability mirror those rejected by the Fourth Circuit in *Perotte*. There, the plaintiffs claimed to be challenging "run-of-the-mill, unconstitutional law enforcement activity" by ICE agents, that extending *Bivens* would not implicate immigration as a whole, and that the inadequacy of Congressional remedies proved the need for a *Bivens* remedy. 922 F. 3d at 525. In rejecting the plaintiffs' claim, the Fourth Circuit held it was up to Congress to decide and that its legislative inaction weighed against the creation of a judicial remedy. *Id.* at 527-28. The same is true here. Even if Plaintiff were ultimately correct that the alternative remedial structure Congress provided in the Travelers Redress Inquiry Program is wholly inadequate, that there will be no burden to either the TSA or the federal government if a *Bivens* remedy is created for airline passengers, or that the nature of TSA screening does not implicate national security, Opp. Br. at 8-9, these factors nevertheless counsel hesitation and doubt that Congress would want a judicially-created remedy against TSA agents for constitutional violations. The decision of whether to create one, then, must be left to Congress. *Ziglar*, 137 S. Ct. at 1858 ("[I]f there are sounds reasons to think Congress might doubt the efficacy or necessity of a damages remedy [then] the courts must refrain from creating the remedy").

\*\*\*

Plaintiff's failure to allege facts sufficient to support a *Bivens* claim is fatal to his case and the Court should dismiss his Complaint with prejudice.

## II. The First Amendment Right Plaintiff Invokes was not Clearly Established

In the event the Court disagrees, Defendants are entitled to qualified immunity under Plaintiff's First Amendment claim.

In response to Defendants' argument that they are entitled to qualified immunity for Plaintiff's First Amendment claim, Plaintiff makes essentially two points: that the consensus of federal appellate courts recognizes a First Amendment right to record public officials, and that there is no good reason to withhold application of this principle in airport security settings involving TSA agents. Opp. Br. at 2-4. Plaintiff might be right. But even if he is, neither point is relevant to Defendants' entitlement to qualified immunity.

Plaintiff has pled a violation of his First Amendment rights to record TSA employees conducting a pat-down search. To determine whether qualified immunity protects Defendants, the court engages in a two-step inquiry, "asking whether a constitutional violation occurred and whether the right violated was clearly established at the time of the official's conduct." *Booker v. Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017). Because the court can address these two issues in any order and the right was not clearly established, the Court need not reach the merits of Plaintiff's claim. *See id.* (addressing only the "clearly established" prong).

In determining whether a right was clearly established, the right is defined at a "high level of particularity." *Wilson v. Kittoe*, 337 F.3d 392, 403 (4th Cir. 2003). Plaintiff's response invokes the opposite: a broad general right to record public officials in public places. Opp. Br. at 2. "At this stage of the analysis, however, the court must narrow its focus." *Richter v. Maryland*, 590 F. Supp. 2d 730, 739 (D. Md. 2008). At the proper level of particularity, Plaintiff is urging recognition of a right to record TSA agents at a security checkpoint. It is those particular contours of a general right to record video that matter here in determining qualified immunity. *See Edwards v. City of*

*Goldsboro*, 178 F.3d 231, 250-51 (4th Cir. 1999) (identifying the particularities of the First Amendment right claimed). Whether the general right to record video that many courts have found to exist *should* apply in the context of a TSA screening is beside the point. *See* Opp. Br. at 3-4 (arguing that it should not "make[] a difference that the public official" being recorded "is a TSA screener at a TSA checkpoint"). What matters is whether it has been clearly established.

Plaintiff claims that the 1st, 3rd, 5th, 7th, 9th, and 11th Circuits have recognized the right. But none of the cases he cites have recognized the existence of the particularized right at issue here. In fact, each circuit decision Plaintiff relies on involves a general right to record video of police or the public while in a public place. *See Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011); *Fields v. City of Philadelphia*, 862 F.3d 353 (3rd Cir. 2017); *Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017); *ACLU of Ill. V. Alvarez*, 679 F.3d 583 (7th Cir. 2012); *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995); *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000). No consensus exists for the particular First Amendment claim asserted here.

Even assuming some consensus existed in other circuits, that would not matter here. "In conducting the clearly established analysis," the court "may look to a consensus of cases of persuasive authority from other jurisdictions" only when "there are no such decisions from courts of controlling authority." *Booker*, 855 F.3d at 538. Plaintiff states that the Fourth Circuit has not "spoken directly to the matter" of whether his asserted First Amendment Right is clearly established. Opp. Br. at 3. But it has, albeit as to the general First Amendment right Plaintiff asserts. As Defendants already noted, the Fourth Circuit held that "the right to record police activities on public property was not clearly established" in 2009. *Szymecki v. Houck*, 353 Fed. App'x 852, 853 (4th Cir. 2009). As of the time the alleged actions in this case took place, then, controlling authority in this Circuit held that there was no clearly established right to record police

6

on public property. It would defy logic to nevertheless claim that the more particularized right to record TSA agents at a non-public location like airports was clearly established by relying on other jurisdictions. *See Int'l Soc. for Krishna Consciousness v. Lee*, 505 U.S. 672, 679-83 (1992) (holding that an airport is a non-public forum).

In any event, because there is no clear consensus on the particularized First Amendment right claimed, the right was not clearly established, and Defendants are entitled to qualified immunity.

**III. The Court has the Authority to Dismiss Plaintiff's Request for Attorney's Fees**

Assuming the Court disagrees with Defendants and Plaintiff's Complaint survives dismissal, his claim for attorney's fees should nevertheless be dismissed. Without citing any authority, Plaintiff argues that a request for attorney's fees is not a "claim for relief" before the Court on a Rule 12(b)(6) motion. Opp. Br. at 17. This is false. *See Consulting Engineers, Corp. v. Martin/Martin, Inc.*, 2016 U.S. Dist. Lexis 189791 (No. 1:16-cv-535, Nov. 15, 2016) (E.D. Va. 2016) (granting motion to dismiss as to claim for attorney's fees because no basis for award was alleged); *Napier v. Columbia Gas Transmission, LLC*, 2018 U.S. Dist. LEXIS 74888 (No. 3:17-4397, May 3, 2018) (S.D. W. Va. 2018) (same).

Other jurisdictions have held the same. *See, e.g., Rissinger v. State Farm Ins. Co.*, 2015 U.S. Dist. LEXIS 84273, *6-7 (No. 1:14-cv-2439, June 30, 2015) (M.D. Pa. 2015) (same); *Adlife Mktg. & Comms. Co. v. Buckingham Bros., LLC*, 2020 U.S. Dist. LEXIS 148775, *8 (No. 5:19-cv-0796, Aug. 18, 2020) (N.D.N.Y. 2020) ("[C]ourts in this Circuit often dismiss claims for statutory damages or attorney's fees at the Rule 12(b)(6) stage").

Because Plaintiff alleges no basis for his fee claim, and there is none, his claim for attorney's fees should be dismissed.

**Conclusion**

No matter how desirable a *Bivens* remedy might be in the context of this case, the court may not create one without satisfying the stringent standards the Supreme Court set forth in *Ziglar*. Contrary to Plaintiff's suggestion, courts regularly find that various asserted constitutional violations are without a *Bivens* remedy. In fact, the Court in *Ziglar* recognized that would be true in "most instances." 137 S. Ct. at 1857. Keeping in mind that the Supreme Court has not extended *Bivens* in over 30 years, the particulars of Plaintiff's allegations here fall far short and his Complaint should be dismissed.

Respectfully submitted,

SHIRRELLIA SMITH and NATALIE STATON

By: \_\_\_/s/_____
William W. Tunner (VSB #38358)
William D. Prince IV (VSB #77209)
John P. O'Herron (VSB #79357)
THOMPSONMCMULLAN, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Tel: (804) 649-7545
Fax: (804) 780-1813
wtunner@t-mlaw.com
wprince@t-mlaw.com
joherron@t-mlaw.com

*Counsel for Defendants Shirrellia Smith and Natalie Staton*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of August, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Jonathan Corbett, Esquire (admitted *pro hac vice*)
958 N. Western Avenue #765
Hollywood, CA 90029
Tel: (310) 684-3870
Fax: (310) 684-3870
jon@corbettrights.com
*Counsel for Plaintiff*

Dustin W. Dyer, Esquire
9071 W. Broad Street
Henrico, VA 23294
Tel: (804) 377-7247
Fax: (804) 377-7247
dustin@dyerimmigration.com
*Pro Se Attorney – Plaintiff (Local Counsel)*

By: /s/
John P. O'Herron (VSB #79357)
THOMPSONMCMULLAN, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Tel: (804) 649-7545
Fax: (804) 780-1813
joherron@t-mlaw.com
*Counsel for Defendants Shirrellia Smith and Natalie Staton*