IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| DUSTIN DYER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:19-cv-921-JAG |
| | ) |
| SHIRRELLIA SMITH, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' BRIEF IN RESPONSE TO BRIEF OF AMICI CURIAE**

The *Amici* advance too loose a standard. In suggesting that this Court recognize a *Bivens* remedy for the plaintiff's First and Fourth Amendment claims, the *Amici* argue that there are good reasons to provide a damages remedy and that the factors Defendants raise do not preclude recognition of one. But a factor need only "counsel[] hesitation" to require a court to decline the requested expansion. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). By asking the wrong question, the *Amici* reach the wrong answer. Their arguments should be rejected.[1]

**I.    The Court Should Reject the *Amici's* Expansive Reading of *Abbasi***

A "remarkably low" threshold governs the question of whether this Court should expand *Bivens*. *De La Paz v. Coy*, 786 F.3d 367, 378 (5th Cir. 2015) (quoting *Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009)). Because the *Amici* agree the plaintiff's Complaint presents new *Bivens*

---

[1] The *Amici* requested, and this Court granted, leave to file an amicus brief in support of neither party. ECF Nos. 23 and 24. This impartiality matters for a court's consideration of whether to allow amici to weigh in. *Jin v. Ministry of State Sec.*, 557 F. Supp. 2d. 131, 136 (D.D.C. 2008). While they carefully avoid expressly supporting the Plaintiff, the *Amici* nevertheless spend their entire brief attempting to rebut Defendants' arguments—on both *Bivens* expansion and qualified immunity—in support of the plaintiff's position.

contexts for the plaintiff's First and Fourth Amendment claims, *see Amici* Br. at 8, they only dispute the applicability of the "special factors" analysis. *Abbasi*, 137 S. Ct. at 1857.

The goal of the "special factors" analysis is to determine whether, in the absence of action by Congress, courts should nonetheless permit a new damages action to proceed. It takes very little to answer this question in the negative: if *any* factor suggests doubt or caution as to the need or efficacy of a new damages remedy, a court *must* decline the invitation. *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). If a court finds "reason to pause before applying *Bivens* in a new context," it must "reject the request." *Id.* While the Supreme Court has articulated some factors to consider, they are not exclusive and are meant to guide the "separation-of-powers principles" at the heart of the inquiry. *Id.* If the question includes "weigh[ing] and apprais[ing]" various considerations, "it should be left" to Congress. *Abbasi*, 137 S. Ct. at 1857.

The *Amici* lose sight of this framework right out of the gate. First, by proposing various "good reasons to recognize a *Bivens* action against TSA agents" for First and Fourth Amendment violations, they re-frame the inquiry. The question is not whether there are good reasons to provide a damages remedy for these constitutional violations by these actors. There might be many. But whether the history and policy of the First and Fourth Amendments, for example, support the principle of awarding civil damages, or whether those rights are implicated by the plaintiff's claims in particular, is irrelevant. *But see Amici* Br. at 5-7. The proper question is: who should decide? And to answer that question, the Supreme Court asks the inverse question from the one posed by the *Amici*: are there *any* reasons Congress might decide *not to provide* a damages remedy?

The *Amici* next err in demanding too much of the "special factors" raised by Defendants. Instead of assessing whether any one of them counsels hesitation or suggests doubt, the *Amici* essentially seek conclusive preclusion of a damages remedy. So, for example, the *Amici* argue that

the plaintiff "appears" not to have another damages remedy, *Amici* Br. at 8-10, that the national security implications of subjecting TSA agents to suit are low, *id.* at 11-14, and that the training required to protect TSA agents from would-be damages claims would be negligible. *Id.* at 15-16. Aside from the merits of these contentions, the "host of considerations that must be weighed and appraised" to assess them makes clear that the determination of permitting damages remedies "should be committed to those who write the laws rather than those who interpret them." *Abbasi*, 137 S. Ct. at 1857.

On the merits, the *Amici* are also wrong to minimize the considerations Defendants raise. The *Amici* give Congressional inaction and the potential impact on TSA operations especially short shrift. *See* ECF No. 19 (Defs. Memo. in Support of Mot. to Dismiss) at 8-10. As to Congressional inaction, it is not simply the absence of a judicial remedy that matters; as *Amici* note, that fact alone would likely sink a claim either way. *Amici* Br. at 15. What matters is whatever legislative scheme exists and what it says about Congress' decision not to provide a remedy. Again, separation of powers is the key to the entire inquiry. Here, Congress has repeatedly legislated in the arena of air-traffic security and continually declined to provide for any type of civil damages resulting from security checks. *See generally* ECF No. 19 at 8-9. The Third Circuit's decision in *Vanderklok v. United States*, 868 F.3d 189 (3rd Cir. 2017), addresses this point and Defendants urge this Court to adopt the same reasoning. *Id.* at 208. The scope and frequency of amending legislation without providing a damages remedy to passengers alleging constitutional violations, in and of itself, counsels hesitation. *See id.*; *Tun-Cos v. Perrotte*, 922 F.3d 514, 527 (4th Cir. 2019) (citing *Abbasi*).

As to the impact on "governmental operations systemwide," the *Amici* find none because TSA agents are already trained in standardized procedures and would simply need to follow existing policy "allowing recording that does not interfere with the screening process or reveal

sensitive information." *Amici* Br. at 15-16. While this claim ignores the fact that extending *Bivens* to TSA agents conducting security checks would very likely lead to additional training,[2] it is worse for ignoring the full scope of "governmental operations" implicated: "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal systems are used to bring about the proper formulation and implementation of public policies." *Abbasi*, 137 S. Ct. at 1858. Given the frequency and importance of TSA security checks, this could lead to a significant volume of First and Fourth Amendment claims against agents, including those that turn on whether a recording "interfere[s] with the screening process" or "reveal[s] sensitive information." *Amici* Br. at 15-16. These concerns are significant and should satisfy the "counseling hesitation" threshold from *Abbasi* and *Hernandez*. Moreover, the only Fourth Circuit decision cited by the *Amici* for recognizing a *Bivens* claim against TSA agents pre-dates *Abbasi* and does not address these issues. *See Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013); *Amici* Br. at 3.

Finally, the *Amici* argue there are no real national security implications in subjecting TSA agents to suit. In support, the *Amici* urge the Court to adopt the rationale of the court in *Linlor v. Polson*, 263 F. Supp. 3d 613 (E.D. Va. 2017). But there are several reasons not to. The decision came out less than a month after *Abbasi*, before the federal courts and this Circuit had the opportunity to weigh its impact and apply its principles. Perhaps unsurprisingly, then, the court in *Linlor* barely relied on the transformative precedent and instead relied heavily on pre-*Abbasi* case law. *See Linlor*, 263 F. Supp. 3d at 619-25. Most importantly, the court relied on its conclusion that "other courts [that] have expressly addressed the propriety of *Bivens* actions against TSA

---

[2] *See Vanderklok*, 868 F.3d at 206-09 (noting that per 49 U.S.C. § 44903, "line TSA employees are not trained on issues of probable cause, reasonable suspicion, and other constitutional doctrines that govern law enforcement officers").

officers . . . have permitted the action to proceed." *Id.* at 624. Both district court cases on which it relied, however, were subsequently reversed by the Third Circuit Court of Appeals. *See id.*; *Vanderklok*, 868 F.3d at 209; *Pellegrino v. United States Transp. Sec. Admin.*, 896 F.3d 207, 231 (3rd Cir. 2018) (citing *Vanderklok* and reiterating that special factors analysis precludes expanding *Bivens* against TSA agents). The analysis in *Linlor* should not be adopted here.

Subjecting TSA agents to suit for damages necessarily implicates national security. The extent of national security implications may vary: suits against border agents may differ from those against TSA agents. But "since regulating the conduct of agents [in an airport performing security screening] unquestionably has national security implications, the risk of undermining [air-traffic security] provides reason to hesitate before extending *Bivens* into this field." *Hernandez*, 140 S. Ct. at 747. Congress might decide the national security implications are low, or that whatever the implications are, subjecting TSA agents to suit is nevertheless worth it. But a fair assessment of the role TSA agents have in the country's national security and public safety realm, and what subjecting them to suit for First and Fourth Amendment violations might mean, satisfies the low threshold of leaving the issue to Congress.

It may be the case that the plaintiff has no other remedy: as *Amici*'s discussion of it attests, the TRIP program's scope and applicability is unclear. *Amici* Br. at 8-11. But "Congress's decision not to provide a judicial remedy does not compel [a court] to step into its shoes." *Hernandez*, 140 S. Ct. at 750. And the uncertainty of TRIP's applicability to a claim like the plaintiff's, in and of itself, creates doubt as to whether expanding that program, or providing damages relief through *Bivens* extension, would be Congress's preferred strategy for addressing constitutional claims by airline passengers.

## II. The Particulars of the First Amendment Right at Issue are not Clearly Established

Assuming the Court recognizes a *Bivens* remedy, the *Amici* also urge the Court to reject Defendants' assertion of qualified immunity as to the plaintiff's First Amendment claim. The *Amici* argue: 1) that there is controlling authority in this Circuit that the First Amendment right at issue was clearly established; and 2) that even if there was not, there is "a mass of persuasive authority" from other jurisdictions showing the First Amendment right at issue was clearly established. *Amici* Br. at 17-18. Neither is correct.

For the first claim, the *Amici* rely on *Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013). *Amici* Br. at 17. There, the court addressed the plaintiff's claim that he had been arrested for speech in the form of writing on his chest that he had revealed at an airport security checkpoint. *Tobey*, 706 F.3d at 384. The district court denied the defendants' motion to dismiss the plaintiff's First Amendment claim on the basis of qualified immunity because it was unclear whether their actions were in response to his speech or some other reasonable security reason. *Id.* at 385. On appeal, the Fourth Circuit found the plaintiff's "right to display a peaceful non-disruptive message in protest of a government policy without recourse was clearly established at the time of his arrest," even in the nonpublic forum of the airport. *Id.* at 391-92.

That is not the same right that is at issue here. Like the plaintiff in his opposition brief, the *Amici* define the right at too general a level. *See* ECF No. 21 (Opp. to Defs. Mot. to Dismiss) at 2; *Wilson v. Kittoe*, 337 F.3d 392, 403 (4th Cir. 2003) (the right in question must be defined at a "high level of particularity" for qualified immunity analysis); *Edwards v. City of Goldsboro*, 178 F.3d 231, 250-51 (4th Cir. 1999) (identifying the particularities of the First Amendment right claimed). The right claimed here is to videotape TSA agents performing a security screening. While the "exact circumstances" of this case need not be the subject of prior adjudication for the right to be

clearly established, a reasonable officer in the Defendants' position would not have known that the First Amendment protection of general, non-disruptive protest speech in an airport also protected the video recording of a security screening. *See Dean v. McKinney*, 976 F.3d 407, 419 (4th Cir. 2020) (assessing the particular contours of the right at issue in light of the "more general applications of the core constitutional principles invoked" and holding that "some conduct is so obviously unlawful that an officer does not need a detailed explanation"); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (noting that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question"). Contrary to the *Amici*'s suggestion, then, the right at issue here was not clearly established in this circuit.

Similarly, the *Amici* rely on extra-jurisdictional authority that does not relate to the same First Amendment right. As their argument expressly notes, the *Amici*'s "mass of persuasive authority" relates to the First Amendment right to record law enforcement officers in *public places*. *Amici* Br. at 18-19. This case, of course, relates to a non-public forum: an airport. *See* ECF No. 19 at 13 (citing cases). While the *Amici* claim the "reasoning underlying" the public-forum cases should apply to TSA agents in airports, *Amici* Br. at 19, that is beside the point. The inquiry for qualified immunity is whether the consensus of cases from other jurisdictions "clearly establishe[s]" the right in question. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 543 (4th Cir. 2017). *Amici* do not point to any such consensus regarding the right to video record law enforcements officers in a non-public forum in general or TSA agents in an airport in particular.

## Conclusion

It might be appropriate to provide civil remedies to citizens whose constitutional rights are violated by TSA officers. Indeed, it may be perfectly in line with the first principles underlying the First and Fourth Amendment rights at issue in this case. But time and again, the Supreme Court

7

of the United States has made clear that doing so is almost always a job for Congress, not the courts. That is particularly the case when, as here, various competing interests exist that implicate whether, and to what extent, such a right should be provided. The court should reject the arguments of the *Amici*, decline to extend *Bivens* to the new contexts at issue in the Complaint, and grant the defendants' motion to dismiss.

        Respectfully submitted,

        SHIRRELLIA SMITH and NATALIE STATON

        By: \_\_\_/s/_____
        William W. Tunner (VSB #38358)
        William D. Prince IV (VSB #77209)
        John P. O'Herron (VSB #79357)
        THOMPSONMCMULLAN, P.C.
        100 Shockoe Slip, 3rd Floor
        Richmond, Virginia 23219
        Tel: (804) 649-7545
        Fax: (804) 780-1813
        wtunner@t-mlaw.com
        wprince@t-mlaw.com
        joherron@t-mlaw.com

        *Counsel for Defendants Shirrellia Smith and Natalie Staton*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of January, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Jonathan Corbett, Esq. (*pro hac vice*)
958 N. Western Avenue #765
Hollywood, CA 90029
Tel: (310) 684-3870
Fax: (310) 684-3870
jon@corbettrights.com
*Counsel for Plaintiff*

Dustin W. Dyer, Esq.
9071 W. Broad Street
Henrico, VA 23294
Tel: (804) 377-7247
Fax: (804) 377-7247
dustin@dyerimmigration.com
*Pro Se Attorney – Plaintiff (Local Counsel)*

Brian D. Schmalzbach, Esq.
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-4746
bschmalzbach@mcguirewoods.com

Katherine Mims Crocker, Esq.
William & Mary Law School
P.O. Box 8795
Williamsburg, VA 23187-8795
Tel: (757) 221-3758
kmcroker@wm.edu

Anne L. Doherty, Esq. (*pro hac vice*)
McGuireWoods LLP
201 N. Tryon St., Suite 3000
Charlotte, NC 28202
Tel: (704) 373-4633
adoherty@mcguirewoods.com
*Counsel for Amici Curiae*

By: /s/
John P. O'Herron (VSB #79357)
*T*HOMPSON*M*CM*ULLAN*, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Tel: (804) 698-6253
Fax: (804) 780-1813
joherron@t-mlaw.com
*Counsel for Defendants Shirrellia Smith and Natalie Staton*