RECORD NO. _____

# In The
# United States Court of Appeals
## For The Fourth Circuit

**SHIRRELLIA SMITH; NATALIE STATON,**

*Defendants – Petitioners*,

**v.**

**DUSTIN DYER,**

*Plaintiff – Respondent*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT RICHMOND**

————————

**PETITION FOR PERMISSION TO APPEAL
PURSUANT TO 28 U.S.C. § 1292(b)**

————————

William W. Tunner
William D. Prince IV
John P. O'Herron
*THOMPSON*MCMULLAN, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia  23219
(804) 649-7545

*Counsel for Petitioners*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. N/A        Caption: Dustin Dyer v. Shirrelia Smith, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Shirrelia Smith and Natalie Staton
(name of party/amicus)

_____

who is _____petitioners_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.  Does party/amicus have any parent corporations?          ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?          ☐YES ☑NO
    If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation?                    ☐YES ☑NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
        If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
        party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
        caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
        corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
        If yes, the United States, absent good cause shown, must list (1) each organizational
        victim of the criminal activity and (2) if an organizational victim is a corporation, the
        parent corporation and any publicly held corporation that owns 10% or more of the stock
        of victim, to the extent that information can be obtained through due diligence.

Signature: /s/John P. O'Herron                           Date:    April 2, 2021

Counsel for: Shirrelia Smith and Natalie Staton

[Print to PDF for Filing]

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES...............................................................iii

INTRODUCTION........................................................................1

STATEMENT OF JURISDICTION .........................................................2

QUESTIONS PRESENTED ...............................................................3

RELIEF SOUGHT BY PETITIONERS .....................................................3

STATEMENT OF FACTS ................................................................4

    I.    The Plaintiff's *Bivens* Allegations...........................................4

    II.    Procedural Posture of this Appeal .........................................5

ARGUMENT...........................................................................8

    I.    The District Court Properly Certified Its Order for Interlocutory Review ...............................................................8

        A.    There is substantial ground for a difference of opinion as to whether *Bivens* should be expanded to encompass the plaintiff's First and Fourth Amendment claims .......................................................8

        B.    Whether *Bivens* should be expanded to encompass the plaintiff's First and Fourth Amendment claims is a controlling question of law, the resolution of which may terminate this litigation............................10

    II.    The Questions Presented Have Far-Reaching Legal and Policy Implications in this Circuit and across the Country .........................................................12

i

CONCLUSION ............................................................................. 13

CERTIFICATE OF COMPLIANCE .................................................. 15

CERTIFICATE OF FILING AND SERVICE ....................................... 16

EXHIBITS

TABLE OF AUTHORITIES

PAGE(S)

CASES

*Atkisson v. Holder*,
    925 F.3d 606 (4th Cir. 2019) ............................................................ 9

*Bivens v. Six Unknown Fed. Narcotics* Agents,
    403 U.S. 388 (1971) .............................................................. *passim*

*Carlson v. Green*,
    446 U.S. 14 (1980) ............................................................... 1

*Davis v. Passman*,
    422 U.S. 228 (1979) ............................................................. 1

*De La Paz v. Coy*,
    786 F.3d 367 (5th Cir. 2015) ................................................. 1

*Doe v. Meron*,
    929 F.3d 153 (4th Cir. 2019) ............................................... 9

*Earle v. Shreves*,
    No. 19-6655, 2021 U.S. App. LEXIS 6990 (4th Cir. 2021) ........ 9, 12

*Hernandez v. Mesa*,
    140 S. Ct. 735 (2020) ......................................................... 10

*Int'l Refugee Assistance Project v. Trump*,
    404 F. Supp. 3d 946 (D. Md. 2019)...................................... 9

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione
Motonave Achille Lauro in Amministrazione Straordinaria*,
    921 F.2d 21 (2d Cir. 1990)............................................... 10-11

iii

*Linlor v. Polson*,
   263 F. Supp. 3d 613 (E.D. Va. 2017) ................................................ 10

*Lynn v. Monarch Recovery Mngmt., Inc.*,
   953 F. Supp. 2d 612 (D. Md. 2013) ................................................... 11

*Mengert v. U.S. Transp. Security Admin.*,
   No. 19-cv-304, 2020 WL 7029893 (N.D. Okla. Nov. 30, 2020) ....... 10

*Reese v. BP Exploration (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) ........................................................... 10

*Tun-Cos v. Perrotte*,
   922 F.3d 514 (4th Cir. 2019) ..................................................... 1, 2, 9

*United States ex rel. A1 Procurement, LLC v. Thermcor, Inc.*,
   173 F. Supp. 3d 320 (E.D. Va. 2016) ............................................. 8-9

*Vanderklok v. United States*,
   868 F.3d 189 (3d Cir. 2017) ................................................. 9, 10, 12

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
   516 U.S. 199 (1996) ........................................................................ 13

*Ziglar v. Abbasi*,
   137 S. Ct. 1843 (2017) ........................................................... *passim*

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. I ............................................................... *passim*

U.S. CONST. amend. IV ............................................................. *passim*

U.S. CONST. amend. V ..................................................................... 1, 9

U.S. CONST. amend. VIII .................................................................... 9

**STATUTES**

28 U.S.C. § 1292(b) ........................................................................... *passim*

**RULES**

Fed. R. App. P. 5(a) ............................................................................... 2

Fed. R. App. P. 5(b) ............................................................................... 3

Fed. R. Civ. P. 12(b)(6) ...................................................................... 4, 5

**OTHER AUTHORITIES**

16 Charles A. Wright, et al.,
    Federal Practice and Procedure § 3930 ........................................ 11

## INTRODUCTION

Fifty years ago, the Supreme Court of the United States first recognized an implied damages remedy for plaintiffs whose constitutional rights were violated by federal agents. *Bivens v. Six Unknown Fed. Narcotics* Agents, 403 U.S. 388 (1971) (Fourth Amendment). Over the following decade, the Supreme Court narrowly expanded this implied remedy to just two additional contexts. *See Davis v. Passman*, 422 U.S. 228 (1979) (Fifth Amendment); *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment).

But this was the "*ancien regime*," and for over forty years since then, the Supreme Court has refused invitations to expand *Bivens* to new contexts. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017); *Tun-Cos v. Perrotte*, 922 F.3d 514, 520 (4th Cir. 2019). In *Ziglar*, the Supreme Court defined the hurdles necessary for engaging in the "disfavored judicial activity" of *Bivens* expansion. 137 S. Ct. at 1857 (quotation omitted). The *Ziglar* framework, as several courts have noted, imposes a "remarkably low threshold" for rejecting such expansion. *See De La Paz v. Coy*, 786 F.3d 367, 378 (5th Cir. 2015). If any factors counsel hesitation, or suggest that "Congress might doubt" the need for an implied damages remedy,

1

*Perrotte*, 922 F.3d at 525, a court "must refrain from creating the remedy." *Ziglar*, 137 S. Ct. at 1858.

Here, the district court expanded *Bivens* to encompass two new contexts: the plaintiff's First and Fourth Amendment claims against the defendant employees of the United States Transportation Security Administration. Because the district court's decision satisfies the criteria for interlocutory review, has significant ramifications in the post-*Ziglar* jurisprudence of this circuit, and is in error, the defendants ask this Court to grant them permission to appeal under 28 U.S.C. § 1292(b).

## STATEMENT OF JURISDICTION

This Court has discretionary jurisdiction over this appeal. In its March 24, 2021, Order (attached as Exhibit A), the district court certified in writing that its February 23, 2021, Order (attached as Exhibit B) met the criteria for 28 U.S.C. § 1292(b) certification: it involved a controlling question of law as to which there is substantial ground for difference of opinion; and an immediate appeal may materially advance the termination of the litigation. 28 U.S.C. § 1292(b). This petition is timely because it is filed within 10 days of the certification order as required by 28 U.S.C. § 1292(b) and Federal Rule of Appellate Procedure 5(a).

2

## QUESTIONS PRESENTED

In its certified Order, the district court found that while this case presented two new *Bivens* contexts, no special factors counseled hesitation as to either. The questions presented in this Petition are:

1. Did the district court err by expanding *Bivens* to the new context presented by the plaintiff's First Amendment claim against the defendant TSA agents by holding that no special factors counseled hesitation under the *Ziglar v. Abbasi* framework?

2. Did the district court err by expanding *Bivens* to the new context of the plaintiff's Fourth Amendment claim against the defendant TSA agents by holding that no special factors counseled hesitation under the *Ziglar v. Abbasi* framework?

3. Did the district court err by denying the defendants qualified immunity by holding that the plaintiff sufficiently alleged a violation of his First Amendment right to record TSA officials in an airport and that the right was clearly established?

## RELIEF SOUGHT BY PETITIONERS

The Petitioners ask this Court to grant interlocutory review under Rule 5(b) and 28 U.S.C. § 1292(b) to address the existence of a *Bivens* remedy for First and Fourth Amendment claims against them, and to review whether a First Amendment right to record TSA agents in an airport was clearly established at the time of the alleged constitutional violations.

## STATEMENT OF FACTS

Because this appeal arises from the district court's denial of a Rule 12(b)(6) Motion to Dismiss, the relevant facts are few.

## I.   The Plaintiff's *Bivens* Allegations

The plaintiff claims the defendants—both TSA agents—violated his First and Fourth Amendment rights in June 2019 by preventing him from recording a pat-down search at the Richmond International Airport and by demanding that he delete the video he had recorded. The plaintiff alleges that when he and his husband reached the Airport's security checkpoint, the plaintiff's husband was required to submit to a pat-down search because he was carrying infant formula. ECF No. 1 at ¶¶ 19-20. As the pat-down of his husband began, the plaintiff opened his cellphone camera and began recording the search. *Id.* ¶ 21.

About a minute later, defendant Staton allegedly told the plaintiff that the pat-down "of [a] person's body" was "sensitive" and that his recording was "impeding" it. *Id.* ¶ 23. The plaintiff claims he was 10 feet away from the search and was not impeding it, so he continued recording. *Id.* ¶¶ 26-28. Staton then left, the plaintiff states, and returned with her supervisor, defendant Smith. *Id.* ¶ 29. Smith allegedly told the plaintiff

4

that he was not allowed to record, so he stopped. Staton then asked Smith to order the plaintiff to delete the video of the search, and Smith allegedly instructed the plaintiff to do so while Staton watched. *Id.* ¶¶ 35-36. While Staton "looked at the screen of his cell phone," the plaintiff deleted the video. *Id.* ¶ 38. The plaintiff and his family then left the security check-point and proceeded to their flight. Plaintiff alleges that he was able to recover the deleted video from his phone. *Id.* ¶ 40.

Plaintiff asserts two claims against Smith and Staton individually. Count I asserts the defendants violated the plaintiff's Fourth Amendment rights by seizing his person and property when they allegedly ordered him to stop recording and delete the video. *Id.* ¶¶ 41-48. Count II asserts the defendants violated the plaintiff's First Amendment right to record the search when they allegedly ordered him to stop recording and to delete the video. *Id.* ¶¶ 49-54. As to both, the plaintiff brings his claims under the amendments themselves and, therefore, seeks recognition of a *Bivens* remedy.

## II.    Procedural Posture of this Appeal

The defendants filed a Rule 12(b)(6) Motion to Dismiss, arguing that no *Bivens* remedy existed for the plaintiff as to either the First or

Fourth Amendment claims and that, in any event, the defendants were entitled to qualified immunity for the First Amendment claim. If it existed at all, the defendants argued, the First Amendment right to record TSA officials conducting a search in an airport was not clearly established at the time of the alleged violation. ECF Nos. 18-19.

Following briefing by the parties, the district court gave leave for amici curiae—two Virginia law professors who write and teach in the area of civil rights and constitutional law—to file a brief in support of neither party. ECF Nos. 23, 26 and 30. Following additional response from the defendants, ECF No. 34, the district court denied the defendants' Motion to Dismiss.

Applying the *Bivens* framework from *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), the district court first held that both the First and Fourth Amendment claims presented a new *Bivens* context. ECF No. 35 at 6, 10.[1] The Supreme Court of the United States has never recognized a *Bivens* remedy for a First Amendment claim, the district court noted, and the

---

[1] The district court's memorandum opinion is attached as Exhibit C to this Petition.

plaintiff's Fourth Amendment claim "differs in a meaningful way" from *Bivens*. *Id.* (internal quotation marks omitted).

Still, the district court found that neither new context presented factors that counseled against finding an implied damages remedy under *Bivens*. *Id.* As to each claim, the district court held that the job responsibilities of TSA agents "do not affect diplomacy, foreign policy, or the national security interests" that precluded *Bivens* recognition in other cases. *Id.* at 7, 10. The district court was also unpersuaded that Congressional inaction on the provision of a damages remedy, the need for additional training were TSA agents subjected to suit, or the TSA's Travel Redress Inquiry Program counseled hesitation. *Id.* at 8-10. Stating that "the Supreme Court has preserved a narrow path to expand *Bivens*," the district court chose "to walk this narrow way" and found that the plaintiff could "pursue *Bivens* actions against the defendants." *Id.* at 4. Following the defendants' request to certify its judgment order under 28 U.S.C. § 1292(b), the district court certified its order for interlocutory review. *See* Ex. B.

ARGUMENT

Expanding *Bivens* is the archetype of a legal question fit for inter-locutory review. As the district court rightly found, its Order denying the defendants' Motion to Dismiss satisfies the criteria of 28 U.S.C. § 1292(b): it "involves a controlling question of law as to which there is substantial ground for difference of opinion," and "an immediate appeal from the order may materially advance the ultimate termination of the litigation." Additionally, expanding *Bivens*, here as always, implicates critical questions at the intersection of separation of powers, civil rights, and constitutional law.

## I.   The District Court Properly Certified Its Order for Interlocutory Review

### A.   There is substantial ground for a difference of opinion as to whether *Bivens* should be expanded to encompass the plaintiff's First and Fourth Amendment claims

There is "substantial ground for difference of opinion" as to whether *Bivens* provides the plaintiff with a damages remedy. 28 U.S.C. § 1292(b). The "substantial ground for disagreement may arise if there is a 'novel and difficult issue of first impression,' or if there is a circuit split and the controlling circuit has not commented on the conflicting issue." *United States ex rel. A1 Procurement, LLC v. Thermcor, Inc.*, 173 F. Supp. 3d

8

320, 323 (E.D. Va. 2016); *Int'l Refugee Assistance Project v. Trump*, 404 F. Supp. 3d 946, 950 (D. Md. 2019).

Since the Supreme Court's ruling in *Ziglar*, it appears that only one circuit of the United States Court of Appeals has addressed the specific question before this Court: whether *Bivens* should be expanded to the new context of a claim for damages under the First or Fourth Amendments against TSA agents. In *Vanderklok v. United States*, 868 F.3d 189, 194, 199 (3d Cir. 2017), the Third Circuit refused to recognize a *Bivens* remedy for a First Amendment claim against TSA agents arising out of an airport screening.

Although this Court's post-*Ziglar* rulings on whether to expand *Bivens* to a new context did not involve the same context as here, the Court declined to expand *Bivens* in each. *See Tun-Cos v. Perrotte*, 922 F.3d 514 (4th Cir. 2019) (Fourth and Fifth Amendments; ICE); *Atkisson v. Holder*, 925 F.3d 606, 621 (4th Cir. 2019) (First and Fourth Amendments; Attorney General and other federal agents); *Doe v. Meron*, 929 F.3d 153, 169-70 (4th Cir. 2019) (Fourth and Fifth Amendments; Department of Defense); *Earle v. Shreves*, 2021 U.S. App. LEXIS 6990, No. 19-6655 (4th Cir. 2021) (First Amendment; Bureau of Prisons).

While the context of First and Fourth Amendment claims against TSA agents has not reached the Supreme Court, there is a "credible basis for a difference of opinion" on the question. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011); *compare Linlor v. Polson*, 263 F. Supp. 3d 613 (E.D. Va. 2017) (expanding *Bivens* to TSA defendants in excessive force claim), *with Mengert v. U.S. Transp. Security Admin.*, No. 19-cv-304, 2020 WL 7029893 (N.D. Okla. Nov. 30, 2020) (citing *Vanderklok* and refusing to expand *Bivens* to TSA defendants). In other words, courts can and do disagree on what amounts to a case-dispositive "reason to pause" before expanding *Bivens* in this context. *See Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020).

**B.   Whether *Bivens* should be expanded to encompass the plaintiff's First and Fourth Amendment claims is a controlling question of law, the resolution of which may terminate this litigation**

The district court was also correct that the issue was a pure question of law whose answer dictates whether this case can proceed: is the plaintiff's suit for damages permissible under *Bivens*? *See Vanderklok*, 868 F.3d at 197 (holding that the *Bivens* question before it was "a threshold question of law."). If it is, the case proceeds. If it is not, the Complaint should be dismissed. *See Klinghoffer v. S.N.C. Achille Lauro Ed Altri-*

*Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) ("[A] question of law is 'controlling' if reversal of the district court's order would terminate the action."); *see generally* 16 Charles A. Wright, et al., Federal Practice and Procedure § 3930 (explaining "controlling" and citing cases).

That an issue implicates a controlling question of law often means it also "materially advance[s] the ultimate termination of the litigation." *See* 28 U.S.C. § 1292(b). In answering whether a § 1292(b) certification will "materially advance the ultimate termination of the litigation," the court considers "whether an immediate appeal would: (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *Lynn v. Monarch Recovery Mngmt., Inc.*, 953 F. Supp. 2d 612, 626 (D. Md. 2013) (internal quotation marks omitted). All three apply here.

If this Court concluded that special factors counsel hesitation and *Bivens* should not be expanded to cover the new contexts at issue, the plaintiff's claims would be dismissed and the case would be over. Because the issue of *Bivens* expansion is determinative of whether the case can

proceed at all, an immediate appeal may save the parties the time and expense of protracted litigation.

## II.    The Questions Presented Have Far-Reaching Legal and Policy Implications in this Circuit and across the Country

This appeal also merits attention due to the implications of the district court's ruling. As a panel of this Court recently noted, "the analytical framework established by the *Ziglar* Court places significant obstacles in the path to recognition of an implied cause of action." *Earle v. Shreves*, 2021 U.S. App. LEXIS 6990, No. 19-6655 (4th Cir. 2021). The reason is as simple as it is foundational: "it is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." *Abbasi*, 137 S. Ct. at 1856.

Taking this step in the realm of air travel makes it even more significant. Wherever it falls on the spectrum of national security interests, the safety and security of air travel and this country's airports is of critical interest to the United States and its citizens. *See Vanderklok*, 868 F.3d at 206-07. And whether TSA agents can be subject to financial liability in connection with the job they perform matters here and across

12

the country—to airline passengers, TSA agents, and the government agencies that finance, train, and supervise their work. This Court's guidance on the *Bivens* questions at issue here is needed.

The same is true of the district court's qualified immunity ruling. *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996) (because "appellate jurisdiction applies to the *order* certified to the court of appeals," the "appellate court may address any issue fairly included within the certified order"). In finding that the First Amendment protected the plaintiff's right to record TSA agents performing a pat-down search, the district court relied on a "growing consensus" of other jurisdictions and noted that this Circuit had not yet addressed the question. Ex. C at 13 and n.9. Likewise, the district court relied on a consensus of other jurisdictions in finding that the right was clearly established at the time of the alleged violation. *Id.* at 15 and n.11. In short, both steps of the qualified immunity analysis would benefit from this Court deciding whether there is such a consensus and, if so, whether to join it.

## CONCLUSION

This Court should exercise its discretion and grant permission to appeal the district court's order. The legal questions are both novel and

important, and their answers will dictate both the outcome of this case and many to come. And if this Court declines to exercise its discretion, the defendant TSA agents here—and others in the future—will be exposed to costly discovery and litigation because of their new-found exposure to liability.

The Petition should be granted.


Date: April 2, 2021                       Respectfully submitted,

                                          SHIRRELLIA SMITH and NATALIE
                                          STATON


                                          By:  /s/John P. O'Herron
                                          William W. Tunner (VSB #38358)
                                          William D. Prince IV (VSB #77209)
                                          John P. O'Herron (VSB #79357)
                                          *Thompson*McMullan, P.C.
                                          100 Shockoe Slip, 3rd Floor
                                          Richmond, Virginia 23219
                                          Tel: (804) 649-7545
                                          Fax: (804) 780-1813
                                          wtunner@t-mlaw.com
                                          wprince@t-mlaw.com
                                          joherron@t-mlaw.com
                                          *Counsel for Defendants Shirrellia*
                                          *Smith and Natalie Staton*

14

CERTIFICATE OF COMPLIANCE

1.    This petition complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

[ X ] this petition contains [*2,712*] words.

[    ] this petition uses a monospaced type and contains [*state the number of*] lines of text.

2.    This petition complies with the typeface and type style requirements because:

[ X ] this petition has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Century Schoolbook*]; *or*

[    ] this petition has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated:  April 2, 2021          /s/ John P. O'Herron

John P. O'Herron (VSB #79357)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Tel: (804) 649-7545
Fax: (804) 780-1813
joherron@t-mlaw.com
*Counsel for Defendants Shirrellia Smith and Natalie Staton*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on the 2nd day of April 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system. Copies have been emailed and mailed, postage prepaid, to the following:

Jonathan Corbett, Esquire (admitted *pro hac vice*)
958 N. Western Avenue #765
Hollywood, CA 90029
Tel: (310) 684-3870
Fax: (310) 684-3870
jon@corbettrights.com
*Counsel for Plaintiff*

Dustin W. Dyer, Esquire
9071 W. Broad Street
Henrico, VA 23294
Tel: (804) 377-7247
Fax: (804) 377-7247
dustin@dyerimmigration.com
*Pro Se Attorney – Plaintiff (Local Counsel)*

By: /s/John P. O'Herron
John P. O'Herron (VSB #79357)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Tel: (804) 649-7545
Fax: (804) 780-1813
joherron@t-mlaw.com
*Counsel for Defendants Shirrellia Smith and Natalie Staton*

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DUSTIN DYER,

        Plaintiff,

v.                                           Civil Action No. 3:19-cv-921

SHIRRELLIA SMITH, et al.,

        Defendants.

## ORDER

This matter comes before the Court on the defendants' unopposed motion for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). (ECF No. 38.) A district court may certify its order for appeal if the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation." § 1292(b). "When a district court determines that the statutory criteria are present, . . . it has a '*duty* . . . to allow an immediate appeal to be taken.'" *In re Trump*, 928 F.3d 360, 369 (4th Cir. 2019) (emphasis in original) (quoting *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000)), *vacated on other ground by In re Trump*, 958 F.3d 274 (4th Cir. 2020).

Here, the defendants ask to appeal this Court's Order that denied the defendants' motion to dismiss. (ECF No. 36.)[1] The defendants, agents of the Transportation Security Administration ("TSA"), moved to dismiss the plaintiff's First and Fourth Amendment claims, both brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The Court denied the motion, finding no special factors counseled against recognizing implied damages

---

[1] The Court explained this Order in its accompanying Opinion. (ECF No. 35.)

remedies under *Bivens* for either of the plaintiff's claims and qualified immunity did not protect the defendants at the motion to dismiss stage.

This Court's Order denying the defendants' motion to dismiss satisfies § 1292(b)'s criteria. It involves "a controlling question of law as to which there is substantial ground for difference of opinion": whether a *Bivens* action lies against TSA agents for First Amendment violations.[2]  The defendants would like to ask the Fourth Circuit a broader question: whether *Bivens* actions lie against TSA agents First *and* Fourth Amendment violations.  Regardless of the question's scope, "an immediate appeal from the order may materially advance the ultimate termination of the litigation" either by eliminating—or reducing by half—the plaintiff's causes of action.  For these reasons and pursuant to § 1292(b), the Court GRANTS the defendants' motion and certifies for appeal its Order denying the defendants' motion to dismiss.

Date: 24 March 2021
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

---

[2] *See United States ex rel. A1 Procurement, LLC v. Thermcor, Inc.*, 173 F. Supp. 3d 320, 323 (E.D. Va. 2016) ("A substantial ground for disagreement may arise if there is a 'novel and difficult issue of first impression,' or if there is a circuit split and the controlling circuit has not commented on the conflicting issue." (quoting *Cooke-Bates v. Bayer Corp.*, No. 3:10cv261, 2010 WL 4789838, at *2 (E.D. Va. Nov. 16, 2010)); *McFarling v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004) ("[R]esolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation.").

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DUSTIN DYER,

            Plaintiff,

v.                                        Civil Action No. 3:19-cv-921

SHIRRELLIA SMITH, et al.,

            Defendants.

## **ORDER**

       This matter comes before the Court on the defendants' motion to dismiss.  (ECF No. 18.)

For the reasons stated in the accompanying Opinion, the Court DENIES the motion.

       It is so ORDERED.

       Let the Clerk send a copy of this Order to all counsel of record.

Date: 23 Februg 2021
Richmond, VA

                                     /s/
                         John A. Gibney, Jr.
                         United States District Judge

EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DUSTIN DYER,
                Plaintiff,

v.                                        Civil Action No. 3:19-cv-921

SHIRRELLIA SMITH, et al.,
                    Defendants.

## OPINION

The plaintiff, Dustin Dyer, alleges that the defendants, both TSA agents, violated his First and Fourth Amendment rights when they stopped him from recording a pat-down search of his husband and ordered him to delete the video he had already taken. The defendants, Shirrellia Smith and Natalie Staton, argue that Dyer's claims fail because he lacks an implied right of action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The defendants also say that qualified immunity protects them from Dyer's First Amendment claim.

Assuming the truth of the factual allegations in the complaint and drawing all inferences in favor of the plaintiff, the Court finds that no special factors counsel against recognizing implied damages remedies for either of Dyer's claims. Further, because Dyer has a clearly established right to record government officials performing their duties, qualified immunity does not protect the defendants at this stage of litigation. The Court, therefore, will deny the defendants' motion to dismiss as to both of Dyer's claims. The Court will also deny the defendants' motion as to the plaintiff's request for attorneys' fees and costs.

# I. BACKGROUND

On June 8, 2019, Dustin Dyer, his husband, and their children traveled through the airport in Richmond, Virginia. When the family entered the TSA checkpoint, TSA agents quickly cleared Dyer and the children. The agents did not, however, clear Dyer's husband. They told Dyer's husband that, per TSA policy, they must perform a pat-down search because he carried infant formula that they could not open for testing.

As the pat-down search began, Dyer turned on his cell phone camera and began recording the search. Dyer stood about ten feet away from the pat-down. After about one minute, TSA Agent Natalie Staton noticed Dyer recording and asked him to stop, saying that his recording impeded the ability of the agent performing the pat-down "to do his job." (ECF No. 1 ¶ 23.) Dyer did not stop recording and asked Staton, "What are you talking about?" (*Id.* ¶ 28.) Staton then left and returned with her supervisor, Shirrellia Smith.

Dyer asked Smith if he could record and Smith responded, "No, no recording." (*Id.* ¶ 31.) Dyer stopped recording. Staton then asked Smith to "order Dyer to delete the recording that he had made so far." (*Id.* ¶ 35.) Smith ordered Dyer to delete the video while Staton watched. "Dyer deleted the recording from his phone while [Staton] looked at the screen of his cell phone . . . ." (*Id.* ¶ 38.)

TSA agents then allowed Dyer, his husband, and their children to leave the checkpoint for their flight. Dyer later recovered a copy of the deleted video from his cell phone.

2

## II. **DISCUSSION**[1]

### *A. Dyer's Allegations*

Dyer brings two claims against the defendants. He says that the defendants violated his Fourth Amendment and First Amendment rights when they ordered him to stop recording the pat-down search and delete the video from his cell phone.

According to the defendants, Dyer may not pursue these claims because he has no right of action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and because qualified immunity protects the defendants from his First Amendment claim. The defendants do not accuse Dyer of inadequately pleading violations of his First and Fourth Amendment rights.

### *B. Availability of a* **Bivens** *Remedy*

When state officials violate the constitutional rights of Americans, the victims sue under 42 U.S.C. § 1983. "But § 1983 does not provide a cause of action against federal officials, and there is no analogous statute imposing damages liability on federal officials." *Tun-Cos v. Perrotte*, 922 F.3d 514, 520 (4th Cir. 2019). In 1971, however, the Supreme Court decided *Bivens*, and "held that, even absent statutory authorization, it would enforce a damages remedy to compensate

---

[1] The defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion gauges a complaint's sufficiency without resolving any factual discrepancies or testing the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in the plaintiff's favor. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a facially plausible claim to relief. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

persons injured by federal officials who violated the prohibition against unreasonable search and seizures." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017).

In the decade following *Bivens*, the Supreme Court recognized two additional situations in which one can sue federal officials for violating the constitutional rights of Americans. *See Davis v. Passman*, 442 U.S. 228 (1979) (allowing an administrative assistant to sue a congressman for firing her because of her gender, thereby violating the Fifth Amendment Due Process Clause); *Carlson v. Green*, 446 U.S. 14 (1980) (allowing a prisoner's estate to sue federal jailers for failing to treat the prisoner's asthma, thereby violating the Eighth Amendment). "These three cases— *Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 137 S. Ct. at 1855.

Although "expanding the *Bivens* remedy" beyond the contexts presented in these three cases "is a 'disfavored' judicial activity," *id.* at 1857, the Supreme Court has preserved a narrow path to expand *Bivens*. This Court chooses to walk this narrow way and finds, for the reasons detailed below, that Dyer may pursue *Bivens* actions against the defendants for the alleged violations of his rights under the First and Fourth Amendments.

### *1. Legal Standard*

Courts apply a two-step test to determine the availability of a *Bivens* remedy against federal officials.

> First, courts must inquire whether a given case presents a "new *Bivens* context." If the context is not new – *i.e.*, if the case is not "different in [any] meaningful way" from the three cases in which the Court has recognized a *Bivens* remedy – then a *Bivens* remedy continues to be available. But if the context is new, then courts must, before extending *Bivens* liability, evaluate whether there are "special factors counselling hesitation in the absence of affirmative action by Congress."

*Tun-Cos*, 922 F.3d at 522–23 (internal citations omitted) (quoting *Ziglar*, 137 S. Ct. at 1857–59). "[A] radical difference is not required" to make a case meaningfully different from the three cases in which the Court has recognized a *Bivens* remedy. *Id.* at 523.

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 137 S. Ct. at 1860.

As for the "special factors" that might counsel hesitation against expanding *Bivens* into a new context, courts consider "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1858. Courts also look to whether "there is an alternative remedial structure present in a certain case." *Id.* The presence of an alternative remedy–even if less effective than the damages available under *Bivens* and not expressly identified by Congress as an alternative remedy–weighs against recognizing a *Bivens* claim in a new context. *See Schweiker v. Chilicky*, 487 U.S. 412, 422-23 (1988); *Bush v. Lucas*, 462 U.S. 367, 378 (1983). Other "special factors" include national security, *Ziglar*, 137 S. Ct. at 1861–62, the difficulty of devising a workable standard for courts to apply, and worries that recognizing a *Bivens* action will "invite an onslaught" of lawsuits. *Wilkie v. Robbins*, 551 U.S. 537, 561–62 (2007).

### 2. Dyer's Fourth Amendment Claim

Dyer alleges that the defendants violated the Fourth Amendment by unreasonably seizing his person and unreasonably searching and seizing his cell phone. Because the defendants serve

as TSA agents—federal government officers—the Court must decide whether *Bivens* provides a remedy for Dyer's Fourth Amendment claim.

### a. New Context

First, the Court must decide whether Dyer's Fourth Amendment claim presents a "new *Bivens* context." *Ziglar*, 137 S. Ct. at 1859. Dyer, just like Bivens, "seeks to hold accountable line-level agents . . . for violations of the Fourth Amendment." *Hicks v. Ferreyra*, 965 F.3d 302, 311 (4th Cir. 2020). But Dyer's Fourth Amendment claim differs "in a meaningful way" from Bivens's for several reasons, including that TSA agents operate under a different statutory mandate from other law enforcement officers. *See* 29 U.S.C. § 114; *Ziglar*, 137 S. Ct. at 1859–60 (listing "the statutory or other legal mandate under which the officer was operating" as a "meaningful difference"). Thus, Dyer's Fourth Amendment claim presents a "new context" under *Bivens*. *Ziglar*, 137 S. Ct. at 1859*; see Linlor v. Polson*, 263 F. Supp. 3d 613, 620 (E.D. Va. 2017) (finding a Fourth Amendment claim against TSA agent for excessive force presented a "new 'context' for purposes of the *Bivens* analysis").

### b. No Special Factors

As Dyer's Fourth Amendment claim arises in a new context, the Court must next consider whether any special factors counsel against implying a *Bivens* remedy in this case. *Ziglar*, 137 S. Ct. at 1859. The defendants argue that several special factors exist, including national security concerns; Congress's refusal to provide a statutory damages remedy against TSA agents; the impracticality of enforcing a *Bivens* claim; and the existence of a congressionally provided alternative remedy. (ECF No. 19, at 7–10.) None of these factors, however, counsel against implying a damages remedy for Dyer's Fourth Amendment claim.

6

*i. National Security*

TSA agents conduct passenger screenings and enforce airport restrictions. These tasks do not affect diplomacy, foreign policy, or the national security interests that have precluded a *Bivens* remedy in other cases. *Tun-Cos*, 922 F.3d at 526. In *Tun-Cos*, the plaintiffs sued Immigration and Customs Enforcement agents under *Bivens* for violating their Fourth Amendment rights. *Id*. The Fourth Circuit determined that

> because immigration enforcement is, at bottom, about ensuring that only those foreign nationals who are legally authorized to be in the United States remain present here, such enforcement has 'the natural tendency to affect diplomacy, foreign policy, and the security of the nation, which . . . counsel hesitation in extending *Bivens*.

*Id*. (citing *Mirmehdi v. United States*, 689 F.3d 975, 983 (9th Cir. 2012)). Enforcement of commercial flight regulations do not implicate the same diplomacy and foreign policy concerns. TSA agents screen all passengers in the same manner, regardless of immigration or diplomatic status. And TSA agents manage the safety of our country's air transportation system, a mission that necessarily captures international travelers but maintains a domestic focus.

Further, this case does not implicate the national security concerns that have counselled against implying a damages remedy in other cases. Determining whether a TSA agent violated Dyer's Fourth Amendment rights would not involve "an inquiry into sensitive issues of national security." *Ziglar*, 137 S. Ct. 1861–62 (declining to extend *Bivens* to a claim against high-ranking executive officials challenging detention policies). Allowing damages in this case would not hamper TSA's efficacy; permitting individuals to record, from a distance, TSA agents performing their duties does not limit TSA agents' ability to screen passengers. Indeed, TSA policy allows individuals to record if they do not interfere with the screening process or record sensitive information.

7

National security concerns, therefore, do not counsel against implying a *Bivens* remedy in this case.

### *ii. Absence of a Statutory Damages Remedy*

The defendants argue that repeated amendment to the statutes governing air transportation security, coupled with the lack of a statutory damages cause of action, indicate a congressional refusal to supply a damages action against TSA agents for constitutional violations. The defendants contend that this implicit congressional refusal counsels hesitation. (ECF No. 19, at 8–9). The Court, however, declines to adopt the defendants' view that congressional inaction amounts to an intentional omission of a damages remedy. Although congressional inaction could indicate an implicit rejection of the viability of constitutional claims against TSA agents, it just as likely indicates implicit permission for such actions.[2] Further, if congressional failure to enact a statutory damages remedy alone constituted a special factor that counselled hesitation, that would preclude all expansions of *Bivens* and would undermine the implied rights of action the Supreme Court recognized in *Bivens*, *Carlson*, and *Davis*. Thus, the absence of a statutory damages remedy for alleged constitutional violations by TSA agents does not counsel against extending a *Bivens* remedy here.

### *iii. Practicality*

The defendants imply that TSA agents do not receive training on the constitutional dimensions of their role and contend that Congress would require training on such issues before

---

[2] Indeed, federal air transportation law does not *shield* TSA agents from liability for constitutional violations. And Congress has limited liability for damages within the air security context. *See* 49 U.S.C. § 44903(k); *id* § 44921(h). Thus, Congress has enacted provisions expressly prohibiting damages actions in certain air travel situations, but has not done so for TSA agents accused of constitutional violations. From this, the Court could infer that Congress intended for TSA agents to remain subject to lawsuits for alleged constitutional violations.

8

imposing liability. (ECF No. 19, at 9–10). At this stage of the litigation, however, it remains unclear whether TSA agents receive constitutional training. And even if they do not receive this training, advising TSA agents of those bounds would have a negligible "impact on governmental operations systemwide," especially considering the importance of the constitutional right at issue. *Ziglar*, 137 S. Ct. at 1858. Federal officials should not evade liability for constitutional violations because their employer has not provided adequate training. Concerns about the practicality of enforcing a *Bivens* remedy in this case, therefore, do not counsel against extending such a remedy.

### *iv. Alternative Remedy*

The defendants argue that the Travelers Redress Inquiry Program (TRIP), created pursuant to 49 U.S.C. § 44926, offers Dyer an alternative remedy.[3] (ECF No. 19, at 10.)[4] In determining whether a remedy counts as an alternative, "the relevant question 'is not what remedy the court should provide for a wrong that would otherwise go unredressed' but instead 'whether an elaborate remedial system . . . should be augmented by the creation of a new judicial remedy.'" *Tun-Cos*, 922 F.3d at 527 (citing *Bush*, 462 U.S. at 388). The defendants argue TRIP satisfies this test.

Although DHS guidance suggests that travelers use TRIP to resolve travel-related issues, including denied or delayed boarding, the authorizing statute says that only those who TSA wrongly identified as a "threat" can use pursue a remedy through TRIP. *See id.* § 44926 ("process for individuals who believe they have been delayed or prohibited from boarding a commercial aircraft *because they were wrongly identified as a threat*") (emphasis added); *Step 1: Should I Use*

---

[3] Section 44926(a) provides that the "Secretary of Homeland Security shall establish a timely and fair process for individuals who believe they have been delayed or prohibited from boarding a commercial aircraft because they were wrongly identified as a threat under the regimes utilized by the Transportation Security Administration." The Department of Homeland Security ("DHS") established TRIP to comply with this statutory mandate. (ECF No. 19, at 10).

[4] The defendants do not identify any other provisions in federal law or regulations that offer Dyer an alternative remedy.

*DHS TRIP?*, Dep't of Homeland Sec. (May 29, 2020), https://www.dhs.gov/step-1-should-i-use-dhs-trip. Here, the plaintiff does not allege that TSA agents delayed him from boarding his flight because they wrongly identified him as a threat. Thus, TRIP does not provide Dyer an alternative remedy or counsel against extending *Bivens* here.[5]

### 3. Dyer's First Amendment Claim

Dyer alleges that the defendants violated the First Amendment by prohibiting him from recording the pat-down search of his husband and ordering that he delete the video from his cell phone. Because the defendants serve as federal officers, the Court must decide whether *Bivens* provides a remedy for Dyer's First Amendment claim.

### a. New Context

The Supreme Court has "never held that *Bivens* extends to First Amendment claims." *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012). Thus, Dyer's First Amendment claim presents a new context under *Bivens*. *See Doe v. Meron*, 929 F.3d 153, 169 (4th Cir. 2019) (finding that the plaintiff's First Amendment claim "presents a new *Bivens* context" "since it involves a new constitutional right").

### a. No Special Factors

As Dyer's First Amendment claim arises in a new context, the Court must determine whether any special factors counsel against implying a *Bivens* remedy here. *Ziglar*, 137 S. Ct. at 1859. The defendants do not separate their special factors arguments against extending *Bivens* to Dyer's Fourth and First Amendment claims. For the same reasons discussed in Section II.B.2.b,

---

[5] Even if TRIP provided Dyer with an alternative remedy, it would not counsel against extending a *Bivens* remedy in this case because TRIP does not amount to an "elaborate remedial system." *Tun-Cos*, 922 F.3d at 527 (citing *Bush*, 462 U.S. at 388).

special factors do not counsel against implying a damages remedy for Dyer's First Amendment claim.

### C. Qualified Immunity

"Qualified immunity protects officials 'who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.'" *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 537–38 (4th Cir. 2017) (quoting *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc)). "In conducting the qualified immunity analysis, '[the] first task is to identify the specific right that the plaintiff asserts was infringed by the challenged conduct.'" *Id.* at 538 (quoting *Winfield v. Bass*, 106 F.3d 525, 530 (4th Cir. 1997) (en banc)). "[Courts] then engage in a two-step inquiry, asking 'whether a constitutional violation occurred' and 'whether the right violated was clearly established' at the time of the official's conduct." *Id.* (quoting *Melgar ex rel. Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010)).

"To be clearly established, a right must be sufficiently clear 'that every reasonable official would have understood that what he is doing violates that right.'" *Covey v. Assessor of Ohio Cty.*, 777 F.3d 186, 195–96 (4th Cir. 2015) (quoting *Reichle*, 566 U.S. at 664). Even "[i]n the absence of controlling authority that specifically adjudicates the right in question," however, "a right may still be clearly established in one of two ways." *Booker*, 855 F.3d at 543. First, "[a] right may be clearly established if 'a general constitutional rule already identified in the decisional law applies with obvious clarity to the specific conduct in question.'" *Id.* (alterations omitted) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Second, "[a] right may . . . be clearly established based on a '"consensus of cases" of persuasive authority' from other jurisdictions." *Id.* (quoting *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004)); *see also Haze v. Harrison*, 961 F.3d 654, 660 n.4 (4th Cir. 2020) (emphasis omitted). Precedent may "clearly establish[]" a right even if a

11

court has not recognized that right in the "specific context before." *Meyers v. Baltimore County*, 713 F.3d 723, 734 (4th Cir. 2013); *Hope*, 536 U.S. at 741 ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances.").

### 1. First Amendment Violation

The Court first considers "whether a constitutional violation occurred." *Booker*, 855 F.3d at 538 (quoting *Greene*, 593 F.3d at 353). For the reasons below, the Court finds that Dyer adequately alleges that the defendants violated his First Amendment rights.

"The First Amendment guarantees that 'Congress shall make no law . . . abridging the freedom of speech.'" *Billups v. City of Charleston*, 961 F.3d 673, 682 (4th Cir. 2020) (quoting U.S. Const. amend. I). "As the Supreme Court has observed, 'the First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw.'" *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) (quoting *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 783 (1978)). "An important corollary to this interest in protecting the stock of public information is that '[t]here is an undoubted right to gather news "from any source by means within the law."'" *Id.* (alteration in original) (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 11 (1978)).

Courts across the country agree that incident to the "right to gather news," citizens have some right to record government officials performing their jobs. The Eleventh and Ninth Circuits recognize a broad right to record matters of public interest.[6] The First Circuit acknowledges a right to record government officials engaged in their duties.[7] Four other circuits recognize a

---

[6] *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) (finding "a right to record matters of public interest"); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (finding a "right to film matters of public interest").

[7] *See Glik*, 655 F.3d at 83 (finding the right to film "government officials in public spaces").

narrower right to record a subset of government officials: law enforcement officers.[8] Considering this growing consensus, this Court finds that the First Amendment protects the right to record government officials performing their duties.[9]

---

[8] *See Chestnut v. Wallace*, 947 F.3d 1085, 1090 (8th Cir. 2020) (implying a recognized right to record police activity); *Fields v. City of Philadelphia*, 862 F.3d 353, 359 (3d Cir. 2017) (finding a right to record "police activity"); *Turner v. Driver*, 848 F.3d 678, 690 (5th Cir. 2017) (finding a "right to record the police"); *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 600 (7th Cir. 2012) (implying a right to record the police).
District courts in the Fourth, Second, and Sixth Circuits have also recognized a right to record law enforcement. *See, e.g., J.A. v. Miranda*, No. PX 16-3953, 2017 WL 3840026, at *6 (D. Md. Sept. 1, 2017) (finding a "right to record police activity in public"); *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 380 (S.D.N.Y. 2015) (finding "the right to record police activity in public" clearly established in the Second Circuit); *Crawford v. Geiger*, 131 F. Supp. 3d 703, 715 (N.D. Ohio 2015), *aff'd in part, rev'd in part on other grounds* 656 F. App'x 190 (6th Cir. 2016) (finding "that there is a First Amendment right openly to film police officers carrying out their duties in public"); *Garcia v. Montgomery County*, 145 F. Supp. 3d 492, 508 (D. Md. 2015) (finding the right to record "police activity, if done peacefully and without interfering with the performance of police duties"); *Szymecki v. City of Norfolk*, No. 2:08cv142, 2008 WL 11441862, at *4 (E.D. Va. Oct. 21, 2008) (finding "the First Amendment protects the video recording of the actions of police officers").
Of course, the Fourth Circuit's decisions guide this Court's interpretations of the First Amendment. The Fourth Circuit, however, has not addressed whether the First Amendment protects the right to record public officials. "The closest the Fourth Circuit has come is *Szymecki v. Houck*, 353 F. App'x 852 (4th Cir. 2009) where it affirmed, in an unpublished opinion, the district court's determination that the 'asserted First Amendment right to record police activities on public property was not clearly established in this circuit at the time of the alleged conduct.'" *Miranda*, 2017 WL 3840026, at *6 (quoting *Szymecki*, 353 F. App'x at 853).

[9] Recognizing that the First Amendment protects the right to record government officials performing their duties enables "a foremost purpose of the Constitution's guarantee of speech": "to enable every citizen at any time to bring the government and any person in authority to the bar of public opinion by any just criticism upon their conduct in the exercise of the authority which the people have conferred upon them." *Alvarez*, 679 F.3d at 600 (quoting Thomas M. Cooley, A Treatise on the Constitutional Limitations 421–22 (1868)).
In addition, when we protect the right to record public officials, we protect against the degradation of various other constitutional rights. This country's racial unrest highlights this principle. Because a cell phone video captured George Floyd's death, the world watched. The world's reaction to this video—and others—sent millions into the streets in protest. Although the racial reckoning continues, this video and the protests it sparked bent "the arc of the moral universe . . . towards justice." Dr. Martin Luther King Jr., Remaining Awake Through a Great Revolution (Mar. 31, 1968). What if the officers had ordered the video that captured George Floyd's death deleted?

13

The First Amendment, however, does not offer absolute protection; the government can regulate activity protected by the First Amendment. The extent to which the government can impose such regulation depends on the type of forum in which the protected activity occurs. In a nonpublic forum—the forum at issue in this case[10]—the government may impose "reasonable" regulations that do not arise from "an effort to suppress the speaker's activity due to disagreement with the speaker's view." *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679, 683 (1992) (holding that the government can impose reasonable restrictions on speech in an airport operated by a public authority). Thus, the government can impose reasonable regulations on the right to record government officials performing their duties in Richmond's airport.

Dyer accuses the defendants of prohibiting him from recording the pat-down search of his husband from about ten feet away and ordering him to delete the video from his cell phone. Dyer says that his recording did not interfere with the screening procedure. (ECF No. 1 ¶ 26.) Accepting the facts asserted by the plaintiff as true, the defendants' demand that Dyer stop recording and delete the captured video plausibly constitutes an unreasonable restriction on the plaintiff's First Amendment right to record government officials performing their duties. In making these allegations, Dyer sufficiently pleads a First Amendment violation.

### b. Clearly Established Right

Next, the Court turns to the second step of the qualified immunity analysis: "'whether the right violated was clearly established' at the time of the official's conduct." *Booker*, 855 F.3d at 538 (quoting *Greene*, 593 F.3d at 353). Although neither the Supreme Court nor the Fourth Circuit

---

[10]    *Capital Region Airport Commission*, Richmond Int'l Airport, https://flyrichmond.com/capital-region-airport-commission/ (last visited Feb. 16, 2021) ("Established in 1975 by an act of the Virginia General Assembly, the Capital Region Airport Commission owns and operates Richmond International Airport (RIC).").

has recognized a right to record government officials performing their duties, both the general constitutional rule and a consensus of cases clearly establish this right.

According to the Fourth Circuit, "it is crystal clear that the First Amendment protects peaceful nondisruptive speech in an airport, and that such speech cannot be suppressed solely because the government disagrees with it." *Tobey v. Jones*, 706 F.3d 397, 391 (2013). Here, Dyer sought to record, from about ten feet away, the TSA conducting a pat-down search of his husband. The TSA agents directed him to stop. Dyer's allegations fall squarely within this "crystal clear" right. *See Glik*, 655 F.3d at 85 (explaining "the brevity of the First Amendment discussion" in many "circuit court opinions that have recognized a right to film government officials or matters of public interest in public space" as evidence of "the fundamental and virtually self-evident nature of the First Amendment's protections in this area"); *see also Sorrell v. IMS Health Inc.*, 564 U.S. 552, 568 (2011) ("An individual's right to speak is implicated when information he or she possesses is subjected to 'restraints on the way in which the information might be used' or disseminated."). Thus, because "a general constitutional rule" "applies with obvious clarity" to the First Amendment violations that Dyer alleges, the right he asserts was "clearly established" at the time of the alleged conduct. *Booker*, 855 F.3d at 543 (alterations omitted) (quoting *Hope*, 536 U.S. at 741).[11]

---

[11] The Court also finds that a "'consensus of cases' of persuasive authority from other jurisdictions" clearly establishes Dyer's right to record in this case. *Booker*, 855 F.3d at 543 (quoting *Owens*, 372 F.3d at 279); *see* Doori Song, *Qualified Immunity and the Clear, but Unclear First Amendment Right to Film Police*, 33 Notre Dame J.L. Ethics & Pub. Pol'y 337, 342–44 (2019) ("With the exception of the Tenth Circuit, courts in every circuit have held that there is a general First Amendment right to film police activities in public, subject to reasonable time, manner, and place restrictions."); *Frasier v. Evans*, No. 119 Civ. 15cv01759, 2018 WL 6102828 (D. Colo. Nov. 21, 2018) ("There exists a First Amendment right to record the police in the public performance of their official duties"), *appeal filed*, No. 19-1015 (10th Cir. 2019).

### D. Attorneys' Fees

Along with damages, Dyer asks the Court to award him "reasonable attorney's fees." (ECF No. 1, at 8.) The defendants argue that Dyer has no grounds for such a request. (ECF No. 19, at 14.)

"The American Rule denies a litigant's claim to attorney's fees by requiring 'each litigant [to pay] his own attorney's fees, win or lose, unless a statute or contract provides otherwise.'" *Consulting Eng'rs, Corp. v. Martin/Martin, Inc.*, No. 1:16cv535, 2016 WL 9223927, at *6 (E.D. Va. Nov. 15, 2016) (quoting *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015)). "As a general rule, federal courts apply this principle consistently and have done so except where 'specific and explicit provisions for the allowance of attorneys' fees under selected statutes' exists." *Id.* (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260 (1975)). "Consequently, unless a statute provides specific and explicit provision for attorney's fees then the American Rule governs, and each party is responsible for their own attorney's fees as a matter of law." *Id.*

Here, Dyer asserts constitutional claims against federal agents through *Bivens*. *Bivens* actions do not provide for attorneys' fees, and Dyer does not cite any other statutory authority for his request. "It therefore does not appear at present that [Dyer] will be eligible for fees at the conclusion of this litigation. "[B]ecause this litigation is in its early stages," however, the Court withholds judgment on this issue and will deny the defendants' motion to dismiss Dyer's request for fees and costs. *Nurse v. United States*, 226 F.3d 996, 1004 (9th Cir. 2000); *see Alyeska Pipeline Serv. Co.*, 421 U.S. at 258–59 (noting that fee awards may depend on the parties' conduct during the litigation).

16

### III. <u>CONCLUSION</u>

For the foregoing reasons, the Court will deny the defendants' motion to dismiss the plaintiff's First Amendment and Fourth Amendment claims (Counts One and Two) and the plaintiff's request for fees and costs. (ECF No. 18.)

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 23 February 2021
Richmond, VA

/s/

John A. Gibney, Jr.
United States District Judge

17