**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 21-1508**

───────────────

DUSTIN WALLACE DYER,

                 Plaintiff – Appellee,

      v.

SHIRRELLIA SMITH; NATALIE STATON,

                 Defendants – Appellants.

------------------------------

UNITED STATES OF AMERICA,

                 Amicus Supporting Appellants.

───────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  John A. Gibney, Jr., Senior District Judge.  (3:19-cv-00921-JAG)

───────────────

Argued:  October 27, 2022                 Decided:  December 29, 2022

───────────────

Before DIAZ, THACKER, and QUATTLEBAUM, Circuit Judges.

───────────────

Reversed and remanded by published opinion.  Judge Thacker wrote the opinion, in which Judge Diaz and Judge Quattlebaum joined.

───────────────

**ARGUED:** John P. O'Herron, THOMPSONMCMULLAN, P.C., Richmond, Virginia, for Appellants.  Jonathan W. Corbett, CORBETT RIGHTS, P.C., Los Angeles, California, for Appellee.  Catherine Meredith Padhi, UNITED STATES DEPARTMENT OF JUSTICE,

Washington, D.C., for Amicus United States. **ON BRIEF:** William W. Tunner, William D. Prince IV, THOMPSONMCMULLAN, P.C., Richmond, Virginia, for Appellants. Brian M. Boynton, Acting Assistant Attorney General, Sharon Swingle, Barbara L. Herwig, Daniel Aguilar, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus United States.

———————————

THACKER, Circuit Judge:

Dustin Dyer ("Appellee") filed suit against two Transportation and Security Administration ("TSA") officers, Shirrellia Smith ("Smith") and Natalie Staton ("Staton") (collectively "Appellants"), alleging they violated the First Amendment by prohibiting Appellee from recording a pat-down search and the Fourth Amendment by seizing Appellee and seizing and searching his cell phone. To state a cause of action for damages, Appellee brought his claims pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Appellants moved to dismiss, challenging Appellee's reliance on *Bivens* and also asserting qualified immunity as to Appellee's First Amendment claim. The district court denied Appellants' motion, recognizing that both claims presented new *Bivens* contexts but finding that no special factor counseled hesitation in extending *Bivens* as to either claim. The district court also held that Appellants were not entitled to qualified immunity, as Appellee had a clearly established right to record government officials performing their duties.

Applying Supreme Court precedent, including the recent decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), we disagree, concluding that *Bivens* remedies are unavailable in this case.

I.

On June 8, 2019, Appellee, his husband, and their children were preparing to board a flight departing Richmond International Airport in Richmond, Virginia. With valid boarding passes, Appellee and his family approached the security checkpoint and presented

themselves for screening.   Appellee and his children cleared the TSA checkpoint. However, TSA policy required Appellee's husband to submit to a pat-down search because he possessed infant formula that could not be opened for testing.[1]

When TSA began the pat-down search, Appellee turned on his cell phone camera and began recording.   About a minute into Appellee's recording, TSA officer Staton approached Appellee and stated, "For the purposes of this, this is sensitive when we're doing pat-downs of the person's body, alright, and you're impeding [unidentified TSA officer's] ability to do his job." J.A. 8.[2]  Appellee, who was standing ten feet away from the pat down, asked TSA officer Staton, "What are you talking about?"  *Id.* at 9.

TSA officer Staton then left and immediately returned with her supervisor, TSA officer Smith.  Appellee asked TSA officer Smith, "Are you not allowed to record?" J.A. 9.  TSA officer Smith responded, "No, no recording."  *Id.*  As a result of his interactions with Appellants, Appellee stopped recording.   Nevertheless, TSA officer Smith then ordered Appellee to delete the existing recording of the pat down search, and Appellee complied.  Thereafter, Appellee and his family were permitted to leave the checkpoint and catch their flight.  Appellee subsequently recovered the deleted video from his cell phone.

---

[1] TSA policy generally prohibits liquids in containers over 3.4 ounces; however, infant formula may be transported if it can be tested for trace explosives.  If a potential passenger does not want the formula to be X-rayed or opened, additional steps are taken to clear the liquid, and the traveling guardian will undergo additional screening.

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

Appellee filed suit in the Eastern District of Virginia, alleging Appellants violated the First Amendment by prohibiting him from recording the pat down search of his husband and ordering him to delete the video from his cell phone. Appellee also alleged a Fourth Amendment violation based on the search and seizure of his cell phone, and seizure of Appellee. Appellants filed a motion to dismiss Appellee's complaint because *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), did not confer a basis for Appellee to assert his constitutional claims for damages. Appellants also asserted qualified immunity as to Appellee's First Amendment claim.

The district court denied Appellants' motion to dismiss, determining "no special factors counsel against recognizing implied damages remedies for" Appellee's First or Fourth Amendment claims. *Dyer v. Smith*, No. 3:19-cv-921, 2021 WL 694811, at *1 (E.D. Va. Feb. 23, 2021). Additionally, the district court held Appellee "has a clearly established right to record government officials performing their duties," such that "qualified immunity does not protect [Appellants] at this stage of litigation." *Id.* Appellants successfully moved to certify the district court's order for interlocutory appeal. Thereafter, Appellants filed a petition to appeal pursuant to 28 U.S.C. § 1292(b).

II.

When we consider issues certified pursuant to 28 U.S.C. § 1292(b) on interlocutory appeal, "we employ the usual appellate standard governing motions to dismiss." *Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 242 (4th Cir. 2019) (quoting *EEOC v. Seafarers Int'l Union*, 394 F.3d 197, 200 (4th Cir. 2005)). We "consider questions of law de novo and construe the evidence in the light most favorable to the non-movant."

*Seafarers Int'l*, 394 F.3d at 200.  Additionally, "[w]e review de novo the denial of a motion to dismiss based on qualified immunity, accepting as true the facts alleged in the complaint and viewing them in the light most favorable to the plaintiff." *Evans v. Chalmers*, 703 F.3d 636, 646 (4th Cir. 2012) (quoting *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006)).

III.

A.

While Congress created 42 U.S.C. § 1983 to provide a claim for damages when a state official violates an individual's constitutional rights, "Congress did not create an analogous statute for federal officials." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). However, in 1971, the Supreme Court created an implied cause of action for monetary damages against federal officials who violate the Fourth Amendment. *See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  Private causes of action for damages against federal officials for constitutional violations have become known as *Bivens* actions.

A federal court's "authority to imply a new constitutional tort, not expressly authorized by statute, is anchored in our general jurisdiction to decide all cases 'arising under the Constitution, laws, or treaties of the United States.'" *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (quoting 28 U.S.C. § 1331).  But this authority is rarely invoked: in the 50 years since *Bivens* was decided, the Supreme Court has recognized only two additional contexts in which an individual may pursue damages against federal officials for violating the individual's constitutional rights. *See Davis v. Passman*, 442

U.S. 228 (1979) (allowing an administrative assistant to sue a congressman for firing her because of her gender, thereby violating the Fifth Amendment's Due Process Clause); *Carlson v. Green*, 446 U.S. 14 (1980) (allowing a prisoner's estate to sue federal jailers for failing to treat the prisoner's asthma, thereby violating the Eighth Amendment).

Just three years ago, this court detailed numerous occasions where the Supreme Court has declined to extend *Bivens* to new contexts. *See Tun-Cos v. Perrotte*, 922 F.3d 514, 521 (4th Cir. 2019) (identifying eight instances where the Court refrained from recognizing an implied damages remedy against federal officials in new contexts). And this year, the Supreme Court all but closed the door on *Bivens* remedies. *See Egbert v. Boule*, 142 S. Ct. 1793, 1810 (2022) (Gorsuch, J., concurring) (opining that the majority has left "a door ajar and [held] out the possibility that someone someday might walk through it even as it devises a rule that ensures no one . . . ever will" (internal quotation marks omitted)). It is against this backdrop that we evaluate whether Appellee's claims may give rise to an implied damages remedy.

B.

We begin our analysis by determining whether an implied remedy for damages may exist as to Appellee's First or Fourth Amendment claims pursuant to *Bivens*.

To determine "whether a *Bivens* remedy is available against federal officials," we first ask "whether a given case presents a new *Bivens* context," i.e., whether it is "different in [any] meaningful way from the three cases in which the [Supreme] Court has recognized a *Bivens* remedy." *Tun-Cos*, 922 F.3d at 522–23 (internal quotation marks omitted) (alternations in original). "If the context is *not* new . . . then a *Bivens* remedy continues to

be available." *Id.* (emphasis in original).  But if the claim arises in a new *Bivens* context, we must next "evaluate whether there are special factors *counselling hesitation*" in expanding *Bivens. Id.* at 523 (internal quotation marks omitted) (emphasis in original).

1.

The district court determined that Appellee's First and Fourth Amendment claims both presented new *Bivens* contexts.  As to Appellee's First Amendment claim, the district court noted, "[t]he Supreme Court has 'never held that *Bivens* extends to First Amendment claims.'"  *Dyer v. Smith*, No. 3:19-cv-921, 2021 WL 694811, at *5 (E.D. Va. Feb. 23, 2021) (quoting *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012)).  The district court also concluded that Appellee's Fourth Amendment claim differed "in a meaningful way" from the original *Bivens* case because "TSA agents operate under a different statutory mandate from other law enforcement officers."  *Dyer*, 2021 WL 694811, at *3.

In determining whether a case presents a new *Bivens* claim, "a radical difference is not required" to make a case meaningfully different from the three cases in which the Court has recognized a *Bivens* remedy.  *Tun-Cos*, 922 F.3d at 523.  The Supreme Court has explained:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 137 S. Ct. at 1860.  Neither party disputes that Appellee's claims present new *Bivens* contexts.  And for the reasons stated by the district court, we likewise agree that the claims presented here are new *Bivens* claims.  Therefore, we move on to the second step of the analysis to determine whether or not a remedy is available in this case.

### 2.

Expanding *Bivens* to create implied causes of action is a "significant step under separation-of-powers principles" and is "disfavored."  *Ziglar*, 137 S. Ct. at 1856–57.  Thus, "the analytical framework established by the *Ziglar* Court places significant obstacles in the path to recognition of an implied cause of action."  *Earle v. Shreves*, 990 F.3d 774, 778 (4th Cir. 2021).

Accordingly, at the second step of the analysis, we consider whether there are any special factors that might counsel hesitation in expanding *Bivens* remedies.  In considering the special factors, we evaluate "whether Congress *might doubt* the need for an implied damages remedy," *Tun-Cos*, 922 F.3d at 525 (emphasis in original), or if there is "reason to pause" before extending *Bivens* to new contexts, *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020).  "'A single sound reason to defer to Congress' is enough to require a court to refrain from creating [a damages] remedy."  *Egbert*, 142 S. Ct. at 1803 (quoting *Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931, 1937 (2021) (plurality opinion)).  "Put another way, 'the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?'"  *Egbert*, 142 S. Ct. at 1803 (quoting *Hernandez*, 140 S. Ct. at 750).  "If there is a rational reason to think that the answer is Congress—as it will be in

most every case . . . —no *Bivens* action may lie." *Egbert*, 142 S. Ct. at 1803 (internal citation omitted).

While the Supreme Court has not provided a comprehensive list of special factors, courts are instructed to consider "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Ziglar*, 137 S. Ct. at 1858.  Courts are also instructed to look to whether "there is an alternative remedial structure present in a certain case." *Id.*  An alternative remedy weighs against recognizing a new *Bivens* claim even if it is less effective than the damages that would be available under *Bivens* and is not expressly identified by Congress as an alternative remedy. *Id.*; *Egbert*, 142 S. Ct. at 1804, 1807.  National security is another special factor to be considered, *Ziglar*, 137 S. Ct. at 1861–62, as are the "difficulty of devising a workable" standard for courts and concerns about "invit[ing] an onslaught of *Bivens* actions." *Wilkie v. Robbins*, 551 U.S. 537, 561–62 (2007).

The district court held, "Assuming the truth of the factual allegations in the complaint and drawing all inferences in favor of [Appellee], the [c]ourt finds that no special factors counsel against recognizing implied damages remedies for either of [Appellant's] claims." *Dyer*, 2021 WL 694811, at * 1.  Appellants argue the district court erred in finding that (1) an alternative remedial structure; (2) national security; and/or (3) a possible impact on TSA operations nationwide did not serve as special factors counseling against the expansion of *Bivens* remedies in this case.

a.

We turn first to a review of the district court's determination that no alternative remedial structure exists. "[A] court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Egbert*, 142 S. Ct. at 1804 (quoting *Ziglar*, 137 S. Ct. at 1858). The district court specifically found that the Travelers Redress Inquiry Program ("TRIP") "does not provide [Appellant] an alternative remedy" and concluded "the absence of a statutory damages remedy for alleged constitutional violations by TSA agents does not counsel against extending a *Bivens* remedy here." *Dyer*, 2021 WL 694811, at *4–5.

Congress directed the Secretary of the Department of Homeland Security to "establish a timely and fair process for individuals who believe they have been delayed or prohibited from boarding a commercial aircraft because they were wrongly identified as a threat . . . by the [TSA]." 49 U.S.C. § 44926(a). The resulting program, TRIP, "is essentially a clearinghouse for traveler grievances." *Latif v. Holder*, 686 F.3d 1122, 1125 (9th Cir. 2012). The Third Circuit has held that although TRIP appears to be principally related to passengers' inclusion on the "No-Fly List," by its terms, it also could provide relief to passengers delayed or detained in their travel. *Vanderklok v. United States*, 868 F.3d 189, 204–05 (3d Cir. 2017).

The plaintiff in *Vanderklok* was "delayed or prohibited from boarding a commercial aircraft" based upon wrongful identification "as a threat." *Id.* at 205. Here, however, Appellee was never identified as a threat. Thus, it is not clear whether Appellee may file a complaint through TRIP. Significantly, however,

> [T]he relevant question is not whether a *Bivens* action would disrupt a remedial scheme . . . or whether the court should provide for a wrong that would otherwise go unredressed. . . . Nor does it matter that existing remedies do not provide complete relief. . . . Rather, *the court must ask only* whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy.

*Egbert*, 142 S. Ct. at 1804 (internal citations and quotation marks omitted) (emphasis supplied). Therefore, the question is not whether TRIP maps neatly onto Appellee's claim. The question is whether Congress has acted or intends to act. And in this context, Congress has acted by establishing TRIP.

While TRIP may not squarely address complaints by an individual similarly situated to Appellee, that silence does not give this court license to usurp Congress's authority in an area where Congress has previously legislated. *See Tun-Cos*, 922 F.3d at 527 (stating that lack of a remedy or "institutional silence speaks volumes and counsels strongly against judicial usurpation of the legislative function"). That is particularly so because Congress has limited judicial review of TSA decisions and refrained from providing any financial remedy for passengers against TSA employees.

For these reasons, we hold that Congress, not the judiciary, is better equipped to provide a remedy here. This counsels against extending *Bivens* in this case.

b.

We turn next to whether national security is a special factor that counsels hesitation in extending *Bivens* in the context of this case. The district court held it was not, finding that TSA screening and enforcement of airport restrictions "do not affect diplomacy,

foreign policy, or the national security interests that have precluded a *Bivens* remedy in other cases." *Dyer*, 2021 WL 694811, at *4.

The Supreme Court has explained, "Matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention." *Haig v. Agee*, 453 U.S. 280, 292 (1981). TSA was created as part of the country's national security effort following the September 11, 2001 terrorist attacks. *Transp. Workers Union of Am., AFL-CIO v. Transp. Sec. Admin.*, 492 F.3d 471, 473 (D.C. Cir. 2007) (citing the Aviation and Transportation Security Act, Pub. L. No. 107-71, 115 Stat. 597 (2001) (codified in part at 49 U.S.C. § 44936 *et seq*.)). And TSA and its employees are tasked with the critical role of "securing our nation's airports and air traffic." *Vanderklok*, 868 F.3d at 206–07.

While we have never addressed a *Bivens* claim against TSA agents, the Third Circuit has declined to extend a *Bivens* remedy based upon TSA's role in national security. *Vanderklok*, 868 F.3d at 189. In *Vanderklok*, the Third Circuit held, "the role of the TSA in securing public safety is so significant that we ought not create a damages remedy in this context. The dangers associated with aircraft security are real and of high consequence." *Id.* at 209. We agree. And although Appellee claims he did not pose a national security risk, it is not our task to ask "whether *Bivens* relief is appropriate in light of the balance of circumstances in th[is] 'particular case.'" *Egbert*, 142 S. Ct. at 1805 (quoting *United States v. Stanley*, 483 U.S. 669, 683 (1987)). To avoid "frustrat[ing] Congress' policymaking role," we instead ask whether Congress is better suited than the courts to conduct that balancing, *id.* at 1803, 1805.

13

As the Supreme Court has recognized, "[n]ational-security policy is the prerogative of Congress and the President," and to impose damages or liability is likely to "caus[e] an official to second-guess difficult but necessary decisions concerning national-security policy." *Ziglar*, 137 S. Ct. at 1861.   Thus, creating a cause of action against TSA agents could "increase the probability that a TSA agent would hesitate in making split-second decisions about suspicious passengers" or disruptions at security checkpoints. *Vanderklok*, 868 F.3d at 27.  The nature and gravity of these risks, and whether they are outweighed by countervailing interests in judicial relief for passengers, make such a situation ill-suited to judicial determination.

Therefore, we hold that the district court erred in concluding that national security concerns do not counsel hesitation in extending a *Bivens* remedy against Appellants.

c.

As "even a single sound reason to defer to Congress" will be enough to require the court refrain from creating a *Bivens* remedy, we decline to extend an implied damages remedy pursuant to *Bivens* against Appellants based on the existence of an alternative remedial structure and/or the interest of national security.  *Nestlé USA, Inc.*, 141 S. Ct. at 1937.[3]  And since Appellee has presented no cognizable claim for damages, we need not address Appellants' qualified immunity defense as to Appellee's First Amendment claim. *See Tun-Cos*, 922 F.3d at 528.

---

[3] We do not separately consider the possible impact on TSA's nationwide operations, as the first two special factors are sufficient to preclude a *Bivens* remedy here.

14

IV.

Therefore, we reverse the district court's denial of Appellants' motion to dismiss and remand with instructions to dismiss.

*REVERSED AND REMANDED*